# Jordan *v.* Ala. Great So. R. R. Co.

## Action for Malicious Prosecution.

1. *When action lies.*—To support an action for a malicious prosecution, malice and the want of probable cause must concur, and must be proved by the plaintiff; and while malice may sometimes be inferred from the want of probable cause, the want of probable cause can never be implied from malice.

2. *Malice defined* —Any motive other than a *bona fide* purpose to bring a person to punishment as a violator of the criminal law, or associated with such *bona fide* purpose, is malicious; but, if a criminal offense has been committed, and there is probable cause for believing that the person accused was the perpetrator, the prosecutor may invoke the punitive power of the law, although he may have a private grievance to redress, or may cherish malice.

3. *Probable cause defined.*—Probable cause is such a state of facts and circumstances · as would lead a man of ordinary caution and prudence, acting conscientiously, impartially, reasonably, and without prejudice, to believe that the person accused is guilty.

4. *Legal advice.*—If the prosecution was instituted by the advice of counsel, given on a full and fair statement by the prosecutor of all the facts known to him, or which by proper diligence he could have ascertained, this is a full defense to the action, although the advice was erroneous.

5. *Probable cause as affected by character of informants.*—The court is unwilling to declare that the prosecutor, or his counsel, in investiga-

[Jordan v. Ala. Great So. R. R. Co.]

ting the facts on which the criminal prosecution was founded, did not employ the necessary care and diligence, because they failed to inquire as to the reputation for veracity of the persons from whom they obtained their information.

6. *Who is liable as prosecutor.*—When a criminal prosecution is instituted by a railroad corporation, through its agents and attorneys, for a malicious injury to its property, the person in its employment who gave the information which led to the investigation, and made the affidavit on which the warrant of arrest was issued, is not in any sense the prosecutor

7. *Declarations and conduct of co-defendant; admissibility as evidence against the other.*—The criminal prosecution having been instituted against plaintiff and another jointly, the declarations and conduct of such third person, before and after the commission of the offense charged, are not admissible as evidence showing probable cause against plaintiff, in the absence of evidence tending to prove a conspiracy or common purpose between them.

APPEAL from the Circuit Court of St. Clair.

Tried before the Hon. L. F. Box.

This was an action by the appellant, Jule L. Jordan, against the appellee, the Alabama Great Southern Railroad Company, for an alleged malicious prosecution of the former by the latter, and is now before this court the second time. See 74 Ala. 85.

The defendant pleaded: 1. Not guilty. 2. That defendant had probable cause for believing and did believe that plaintiff was guilty of the charge preferred against him by defendant as averred in plaintiff's complaint. 3. That defendant acted under an honest belief that plaintiff was guilty of the charge preferred against him. 4. That there was probable cause for believing that plaintiff was guilty of the charge preferred against him. 5. That the said prosecution against plaintiff was commenced in good faith and without malice, after the facts upon which it was begun had first been fairly laid before, and fully stated to, practicing lawyers of Alabama of high character and capacity, and upon the advice therefrom given by said lawyers, that plaintiff was liable to the prosecution for and guilty of the offense charged."

On the trial it was admitted by the defendant that one William Lively, a section boss on the railroad of defendant, did, in December, 1881, make an affidavit before E. J. Robinson, judge of the County Court of St. Clair county, State of Alabama, charging the plaintiff and one James Canterbury, under § 4239 of the Code of 1876, with the offense of wantonly and maliciously obstructing or injuring the railroad of defendant in said county, and thereupon a warrant was issued for the arrest of plaintiff and said Canterbury, and under it plaintiff was arrested and imprisoned two days and nights. The said judge, E. J. Robinson, who was introduced as a witness for the plaintiff, testified that, on the

trial before him of plaintiff and said Canterbury on said charge, George White (colored) testified that on the night of the alleged injury to the road he (White), while on his way home heard a noise like some one was working on the road, and, when about 90 or 100 yards from the parties making the noise, he called to know who it was, when some one responded "who in the hell are you?" and fired two pistol shots at him; that he saw two men, one large, corresponding in size with Canterbury, and the other small, corresponding in size with plaintiff, and that he recognized the voice of Canterbury; that as soon as the shots were fired, he ran to the house of William Lively, section boss at Whiting Station on said road, and told him some one was tearing the railroad track up, and he and said Lively went immediately to where he had seen said parties on the road, and arrived just in time to flag down the south-bound freight train, which was due at 1 A. M.

Robinson further testified, that on the trial of said case against the plaintiff and Canterbury, said William Lively, as a witness for the State, corroborated the testimony of the witness, George White, in so far as it related to said Lively, and also testified, that when he and White arrived at the place where White claimed to have seen the two men, they found one of the fish bars removed and the end of a rail moved about an inch in, and some of the spikes which fastened the rail down taken out, so that it would in that condition have thrown the train off the track, and that the next morning he went to the place and found the tracks of two men corresponding with those of plaintiff and Canterbury, which he followed in the direction of Canterbury's house until they were lost in the woods, and that he had previous to that time heard said Canterbury make threats against one Satterwhite, who was at that time supervisor of a division of said railroad, because Satterwhite had "marked out" some cross-ties put on the road by Canterbury. The plaintiff objected to that portion of the above testimony relating to threats made by Canterbury against Satterwhite, and moved to exclude it. The court overruled the objection and refused to exclude said evidence, and the plaintiff excepted.

Robinson also testified, that on the trial of said case against plaintiff and said Canterbury, Fred Jones (colored), testified that a few days after the alleged injury to the road, Canterbury approached him (Jones) and asked him to say that he had loaned Canterbury a horse to ride to Greensport on the evening of the night of the alleged injury, and that Canterbury was not at home on that night, when, in

fact, Canterbury had borrowed the horse afterwards. The plaintiff objected to and moved to exclude all this testimony as to what said Fred Jones had testified on said trial. The court overruled the objection and motion, and the plaintiff excepted.

The proof further showed, that on the trial of said case against plaintiff and Canterbury, several witnesses impeached the character for truth and veracity of said George White and William Lively; and that plaintiff and Canterbury lived together at the time of the alleged injury to the road, and on said trial, were bound over to answer any indictment which might be found against them by the grand jury of St. Clair county on said charge, but no indictment was found and nothing further was done toward the prosecution of said case.

Several witnesses were introduced by plaintiff, who testified, that they knew the characters of George White and William Lively for truth and veracity in the community in which they lived, and that they were bad.

The plaintiff testified, among other things, that about ten days prior to the alleged injury to the railroad, he and William Lively had a difficulty, in which Lively kicked him and pushed him off the railroad track and made several threats against him. The defendant objected to this testimony, on the ground that the evidence did not show that the railroad company knew of the alleged malice of Lively toward the plaintiff. The court sustained the objection and excluded the evidence, and the plaintiff excepted.

Canterbury testified, among other things, that about ten days before the said prosecution of plaintiff and him (witness), he heard William Lively make threats against plaintiff. The defendant objected to this testimony, and moved to exclude it. The court sustained the objection and granted the motion, and the plaintiff excepted.

Ellis Phelan, Esq., as a witness for the plaintiff, testified, substantially, that at the time of the alleged injury to the railroad, he was practicing law and was attorney for the railroad (defendant), and was employed by the railroad to investigate the facts, and if they warranted it, to prosecute plaintiff and Canterbury for said alleged injury, and by direction of the president of the road, he associated with him in said case Messrs. Inzer & Greene, attorneys at Ashville, in St. Clair county; that he went to see William Lively and told him (Lively) he wanted him to go with him (witness) to Ashville for the purpose of commencing a prosecution against plaintiff and Canterbury if, after consultation with Inzer & Greene, a prosecution should be decided on; that

[Jordan v. Ala. Great So. R. R. Co.]

they went to Ashville, and after examining Lively and Mr. Satterwhite, the road master, and two colored men, who stated the facts above set forth as the testimony of Lively and George White and Fred Jones on the trial of the case, and after consulting over the evidence with Inzer & Greene, a prosecution was determined on, and he (witness) drew up the affidavit, and it was made by Lively at his (witness') request; and that he and Inzer & Greene conducted the prosecution of the case before the county court, and were paid by the railroad. James T. Greene, of the firm of Inzer & Greene, corroborated the testimony of the witness, Phelan, and further testified, that on the facts stated by George White, William Lively and Fred Jones (set forth in their testimony above), Inzer & Greene advised the said prosecution of plantiff and Canterbury.

The court gave the following written charges, at the request of the defendant, to each of which, the plaintiff excepted :

1. "If the jury believe from the evidence, that before the institution of the prosecution against the plaintiff, the defendant in this action, fairly and truly stated the facts to counsel, and under the advise of counsel, instituted the prosecution, then the verdict of the jury should be for the defendant."

2. "The defendant may rebut the presumption of malice, arising from the want of probable cause, by proof that before instituting the prosecution, the defendant fairly and truly stated the facts to counsel, and under the advice of counsel, in good faith instituted the prosecution."

3. "It is a complete defense to this action, that the defendant instituted the prosecution in good faith, under the advice of counsel given upon a full and fair disclosure of the facts, if the jury find from the evidence it was so instituted."

4. "If the jury believe from the evidence in this case, that a full and fair statement of all the facts was made to counsel learned in the law, and the defendant honestly acted on the advice of such counsel in instituting the prosecution for which this action was brought, this is a complete defense to the action."

5. "In no event can the jury find a verdict for the plaintiff in this case, if they believe from the evidence, that there was no malice on the part of the defendant in instituting the prosecution in this case towards the plaintiff."

6. "It matters not how causeless, in fact, may have been the prosecution, if the defendant acted in good faith and without malice in preferring the charge, this is a full defense to the action."

The plaintiff asked the following written charges, which

LXXXI.

[Jordan v. Ala. Great So. R. R. Co.]

the court refused, and to the refusal of each, the plaintiff excepted :

1. "If the jury believe from the evidence, that the defendant could, by the exercise of reasonable diligence and prudence, have ascertained that the witnesses upon whom it relied were men of bad character for truth and veracity, and that defendant failed to exercise such diligence and prudence before communicating all the facts within its knowledge, bearing on the guilt or innocence of the plaintiff to counsel, then the advice of counsel is not available as a defense in this case."

2. "Any prosecution carried on wantonly and for no purpose of justice, is malicious, and any motive, other than simply instituting a prosecution for the purpose of bringing a person to justice, is a malicious motive on the part of the person who acts under the influence of it; therefore, if the jury believe from the evidence in this case, that the defendant voluntarily procured or caused the prosecution to be procured against the plaintiff, out of motives of private interest, and not for the public good, the jury may infer malice from such wrongful act."

3. "It is not necessary that the defendant in this action should have been the originator of the prosecution against the plaintiff; it is enough to render defendant liable in damages, that it voluntarily participated in the prosecution, and that the prosecution was carried on with the countenance and approbation of defendant, if the jury find the other facts fixing defendant's liability."

4. "If the jury believe from the evidence, that the witnesses who testified for the prosecution on the preliminary trial of plaintiff were unworthy of belief, then they must infer a want of probable cause for believing plaintiff's guilt of said charge, and find for the plaintiff."

5. "If the jury believe from the evidence, that the witnesses who testified for the prosecution on the preliminary trial of plaintiff, were unworthy of belief, then malice must be inferred and the jury must find for the plaintiff."

6. "If the jury believe from the evidence, that there was a want of probable cause for believing plantiff's guilt of the charge for which he was prosecuted by the defendant, then the plaintiff is entitled to damages in this suit, and the jury must so find."

The rulings of the court upon the evidence and the giving of the charges asked by defendant, and the refusal of those asked by the plaintiff, are assigned as error.

M. M. SMITH, and JOHN D. STRANGE, for appellant.

15

PHELAN, INZER & GREENE, and DOBBS, *contra.*

STONE, C. J.—To maintain an action for a malicious prosecution, the prosecution must have been instituted, or instigated with malice, and without probable cause for believing the person prosecuted to be guilty. Both the malicious motive and the absence of probable cause must co-exist, to constitute a cause of action, and the burden of proving each of these essential elements rests on the plaintiff, in the first instance. Malice itself is harmless, unless it is supplemented with the want of probable cause, but malice may sometimes be inferred from the want of probable cause. The latter, however, can not be inferred from the former—malice—no matter how virulent it may be. These principles have been so often asserted, have become so grounded and understood, that a citation of authorities would seem to be unnecessary. *McLeod v. McLeod,* 73 Ala. 42 ; *Steed v. Knowles,* 79 Ala. 446 ; 4 Wait Ac. & Def. 342, 346.

. Malice may be defined to be any "indirect motive of wrong." Any motive, not a *bona fide* purpose, or, not associated with a *bona fide* purpose of bringing a person to punishment as a violator of criminal law, is a malicious motive on the part of the person who acts under its influence. If a case is trumped up for the purpose of annoyance, or, solely as a means of deterring or frightening other people, without intention of prosecuting it to judgment, there is, in such proceeding, no legitimate foundation for a criminal prosecution. Criminal laws were enacted for the promotion of public security and public repose, and should be executed in the same spirit. It is no violation of that spirit, however, which will stay the arm of the law, if the person who invokes its restraining or punitive power has a private grievance to redress, or a private malice to goad him on, provided a criminal offense has been committed by the accused, or, there is probable cause for believing he has committed such offense.

Probable cause is such a state of facts and circumstances as would lead a man of ordinary caution and prudence, acting conscientiously, impartially, reasonably and without prejudice, to believe, on the facts within his knowledge, that the person accused is guilty.—4 Wait Ac. & Def. 343.

There is a shading of this doctrine of probable cause, which may as well be stated here. Where a prosecutor has fully and fairly submitted to learned counsel all the facts which he knows, or by proper diligence could know to be capable of proof, and is advised that they are sufficient to sustain the prosecution, and acting in good faith upon such

opinion he does institute criminal proceeding, he can not be held liable in an action for malicious prosecution, although the legal opinion given be erroneous.   Such advice honestly sought and honestly acted on, supplies the indispensable element of probable cause.—*McLeod v. McLeod*, 73 Ala. 42 ; *Steed v. Knowles*, 79 Ala. 446 ; 4 Wait Ac. & Def. 354.   And such advice conscientiously sought and obtained tends to rebut malice as well.

In the trial of this cause in the Circuit Court, it was contended by the plaintiff, appellant here, that the defendant corporation had not been sufficiently diligent in obtaining information, before instituting the criminal prosecution, that if counsel, who investigated the facts, and advised the prosecution, had, while obtaining the information, inquired of the reputation of their informants, they would have learned it was bad, and, hence, could not have regarded the statements made to them as furnishing probable cause for belief of guilt. No authority is cited in support of this view, and we think such ruling would establish a dangerous precedent.   In the absence of some known fact or circumstance calculated to arouse suspicion, we are unwilling to declare as a rule that information received should be treated with *prima facie* distrust.   Perhaps the true rule is, that the law raises no presumption as to character, whether it is good or bad.   It is certainly never presumed to be bad, in the absence of all fact or circumstance tending to show it is so.   No certain rule can be laid down for believing or not believing information received.   It depends on so many things, not the least potent of which are the reasonableness of the narrative, and the manner of the narrator, that we are unwilling to hazard the attempt.

We hold there was no testimony in this case, tending to show that Lively was in any sense the prosecutor, or that he instigated the prosecution.   He may have given the information which led to the investigation by the railroad's attorneys.   It was the latter, however, who advised and caused the prosecution.   True, Lively made the affidavit under which the warrant of arrest was issued.   He did it, however, at the instance of the attorneys, and because he knew some of the requisite facts.   He did not thereby make himself the prosecutor.

It is not our intention to apply the principles stated above to each of the several rulings in detail.   The six charges given at the instance of defendant were each and all free from error.   Of the charges requested by plaintiff, the first, fourth, fifth and sixth charges need no special comment.   They were all rightly refused on the principles declared above.

The second charge asked has a single fault. It requires that to justify or excuse a prosecution, the motive of its institution must be single—"for the purpose of bringing a person to justice." According to that charge a prosecution is malicious, notwithstanding there may have been probable cause for its institution; nay more: notwithstanding the person prosecuted may have been guilty, if there was any motive for its institution, other than the simple purpose of bringing the person prosecuted to justice. If this be sound, then the action may be maintained on malice alone, without the other indispensable element, want of probable cause. Some of the authorities state the principle as the charge asserts it, but they can not be reconciled with the fundamental doctrine which governs this class of actions.

There is, as we have said, no testimony that any person other than the railroad corporation, through its authorities, instituted the prosecution against Jordan. Charge 3 asked by plaintiff, although asserting a correct principle of law, was abstract, and rightly refused on that account.—3 Brick. Dig. 113, § 106.

The Circuit Court erred in allowing the testimony of the witness, Lively, as to threats he had heard Canterbury make, and in allowing the testimony, that Fred Jones had testified on the criminal trial, to certain propositions made to him by Canterbury. If there was any testimony tending to prove a conspiracy, or common purpose, between Canterbury and Jordan, it was the testimony of the single witness, George White, which tended to show that they were both present engaged in deranging the defendant's railroad track. The threats proved were made, if at all, some time before the track was tampered with, and the alleged proposition to Jones some time afterwards. There was no proof tending to show the formation of a common purpose at, or before the alleged threats were made; and the alleged proposition can not be interpreted as promotive of a purpose to tamper with the railroad track. This was not proper testimony against Jordan, and hence should not have been received on this trial.

We find no other error in the record.

Reversed and remanded.