# Louisville & Nashville R. R. Co. v. Stephenson.

### *Malicious Prosecution.*

(Decided November 14, 1912. Rehearing denied December 7, 1912. 60 South. 490.)

1. *Malicious Prosecution; Elements.*—In order to sustain an action for malicious prosecution, it is incumbent to show the termination of the prosecution and that it was instituted maliciously and without probable cause.

2. *Same; Want of Probable Cause.*—The facts stated and it is held that the prosecution was instituted by defendant through its counsel upon probable cause, and that defendant is not liable to plaintiff in malicious prosecution.

3. *Same; Probable Cause.*—Information received from apparently respectable persons and believed to be credible, touching the commission of an offense, is sufficient evidence of probable cause for a prosecution against a defendant.

4. *Same; Jury · Question.*—Where the facts relied on to show probable cause are admitted or undisputed, the question of whether there is probable cause for the institution of a prosecution, becomes one for the court.

5. *Same; Aiding Prosecution; Liability of Master.*—Although strict in forbidding third persons from intermeddling in actions concerning others, the ancient common law permitted a master to retain counsel for his servant and go with him to the trial.

6. *Same; Liability of Employee.*—A master may furnish counsel and assistance to a servant who becomes involved in litigation arising out of an act done in the master's service, providing the master does not knowingly aid the servant in perpetrating a wrong; and under the facts in this case, the master could do all that it was claimed it did without making itself liable for malicious prosecution on the ground that it aided and abetted the prosecution.

7. *Same; Probable Cause.*—In order to render the railroad company liable in malicious prosecution on the ground that it ratified a prosecution against plaintiff, instituted by its employee, by directing its counsel to assist in the prosecution, the company must have acted without probable cause.

8. *Witness; Credibility.*—Where a party produces a witness and offers his testimony, such party vouches for the credibility of such witness.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

[Louisville & Nashville R. R. Co. v. Stephenson.]

Action by Joe Stephenson against the Louisville & Nashville Railroad Company, for damages for an alleged malicious prosecution. Judgment for plaintiff and defendant appeals. Reversed and remanded.

EYSTER & EYSTER, for appellant. Evidence of the guilt of the accused or any statement made by him going to prove probable cause is admissible.—8 Enc. of Evid. 396, 398; 26 Cyc. 93 and 96. The court erred in giving charge B requested by plaintiff.—Cooley on Torts, 213; *McLeod v. McLeod,* 75 Ala. 486; 26 Cyc. 53. Where the facts are undisputed, the question of probable cause is one of law.—*Ewing v. Sanford,* 19 Ala. 605; *Gulsby v. L. & N.,* 167 Ala. 129; *McLeod v. McLeod, supra; Lunsford v. Dietrich,* 93 Ala 569; *O'Neal v. McKenna,* 116 Ala. 620. As malice is defined by law, it is not shown to have existed on the part of either the defendant or Shaw.—Authorities supra. On these authorities it is insisted that the court erred in refusing charges requested by defendant.

TIDWELL & SAMPLE, for appellee. It is competent to show that the prosecution had ended.—*So. C. & F. Co. v. Adams,* 131 Ala. 147; *Watson v. Cain,* 54 South. 610. Charge B was properly given.—*O'Neal v. McKenna,* 115 Ala. 620; *McLeod v. McLeod,* 75 Ala. 485. Charge 1 was properly given.—*Jordan v. A. G. S.,* 8 South. 191; *Shannon v. Sims,* 40 South. 574. The court properly refused to give the charges requested by defendant on the advice of counsel rule.—*Grogan's Case,* 57 South. 42; *Stewart v. Blair,* 54 South. 506. The other charges were misleading and argumentative.—*R. R. Co. v. Wheeler,* 46 South. 262. The question of probable cause is one for the jury.—93 Ala. 565; 56 South 971; 25 Mich. 45; 73 Ala. 604.

PER CURIAM.—This suit was brought by appellee against appellant for damages for a malicious prosecution. During the month of June, 1910, C. M. Shaw, a flagman on one of appellant's trains, became involved in a personal difficulty with appellee. Shaw, as a result of the combat, received a broken nose and probably other bruises. He lived in Nashville, and was on that or the succeeding day carried to his home, where he remained confined to his room for several days on account of his injuries. On July 13th he obtained a pass from appellant and went to Decatur and made two affidavits against appellee. In one of the affidavits he charged the appellee with having assaulted and beat him with knucks, and in the other affidavit appellee was charged with carrying knucks concealed about his person. The case against appellee, in which he was charged with assault and battery, was tried by a jury; the local counsel of appellant at Decatur appeared with the solicitor and assisted him in the trial, and appellee was acquitted. Thereupon the solicitor dismissed the case against appellee in which he was charged with carrying knucks concealed about his person. The above prosecutions having terminated, this suit was brought upon the theory that the criminal prosecutions were in fact either maliciously and without probable cause instituted by the appellant, or that appellant aided and abetted Shaw in the institution of the prosecutions, which it is claimed were instituted by Shaw maliciously and without probable cause, or that the appellant, after Shaw had instituted the prosecutions maliciously and without probable cause, ratified the prosecutions and participated therein by employing counsel to aid the solicitor in prosecuting the same.

1. When an action of malicious prosecution is brought by a plaintiff against a defendant, the burden

is upon the plaintiff to offer evidence sufficient to rea-
sonably satisfy the jury that the prosecution which was
instituted against him by the defendant has terminated;
that it was instituted against him by the defendant
without probable cause; and that it was maliciously in-
stituted against him. The above three elements are essen-
tial, and, unless the plaintiff in the action for malicious
prosecution offers evidence sufficient to reasonably sat-
isfy the jury of the existence of each of said essential
elements, he is not entitled to recover. In the present
case the prosecutions which were instituted by Shaw
against appellee had terminated before this action was
brought, and the only questions presented by the facts,
if it be conceded that appellant, through Shaw as its
agent, actually instituted the prosecutions, are whether
said prosecutions were instituted by appellant upon
probable cause, and, if not, whether they were mali-
ciously instituted by appellant against appellee.

When the case against appellee in which he was
charged with assaulting and beating Shaw was tried,
Shaw testified to facts which, if true, conclusively es-
tablished not only that appellee was guilty of assaulting
and beating him with knucks, but also that the appellee
carried knucks concealed about his person. On that
trial appellee testified that he struck Shaw in said diffi-
culty, but that he did not strike him with knucks, and
that he had no knucks about his person on the occasion
named. In that he was corroborated by several wit-
nesses and was, as we have above stated, acquitted.

The appellee, in his efforts to make out his case
against appellant, showed affirmatively that appellant,
when the prosecutions against appellee were begun in
the office of appellant's local counsel in Decatur, was
possessed of the information which had been given it by
Shaw, which Shaw then and afterwards swore was true,

and not only failed to show that appellant possessed any other information, but, on the contrary, offered evidence tending strongly to show that appellant possessed no other information. In addition to this, the appellee showed, by his evidence, in his efforts to make out his case against appellant, that all of the facts to which Shaw subsequently testified when the assault and battery case was tried were stated to appellant's local counsel at the time the prosecutions were instituted, and that the prosecutions were instituted upon the advice of such counsel. If Shaw told appellant's attorney the truth when the prosecutions were instituted, the appellee was guilty of the offenses with which he was charged in the affidavits. If, on the contrary, Shaw told the attorneys a lie, there is nothing to indicate that appellant or its attorneys had any reason to disbelieve Shaw, and, under the law, the appellant and its attorneys had a right to accept Shaw's statements as true and to act upon them.

There is absolutely nothing to indicate that, when the prosecutions were instituted, the appellant or its attorneys had any reason to doubt the truth of Shaw's statements, and it is a familiar proposition that information received from persons apparently respectable, and believed to be credible, that a crime has been committed and that it was committed by a certain named person, is sufficient evidence of reasonable and probable cause for a prosecution against such named person for such crime.—*Jordan v. A. G. S. R. R. Co.,* 81 Ala. 220, 8 South. 191; 19 Am. & Eng. Ency. of Law, 661; *Chatfield v. Comeford,* 4 F. & F. 1008.

The question as to whether or not there is probable cause may or may not be a question for the jury, according to the circumstances of the particular case. When the facts relied upon to constitute probable cause are

admitted or are undisputed, that question becomes a question of law for the court, and should not be submitted to the determination of the jury. The burden, as we have said, was upon appellee to show, by evidence, that appellant was without probable cause in instituting the prosecutions, but, instead of meeting that burden, appellee's evidence disclosed affirmatively that appellant in instituting the prosecutions—if it be conceded that the prosecutions were instituted by appellant—acted upon probable cause.

When appellee placed one of the local counsel of appellant upon the stand as his witness, he vouched for the credibility of the testimony of that witness, and not only did the testimony of that witness show that the prosecutions against appellee were instituted upon probable cause, but his testimony was, on that subject, corroborated by all of the other evidence in the case. In other words, in attempting to make out a case against appellant, appellee affirmatively showed, by testimony offered by him, a defense for appellant to this action.— *Ewing v. Sanford,* 19 Ala. 605; *McLeod v. McLeod,* 75 Ala. 487; *Walker v. S. E. Ry. Co.,* 39 L. J. C. P. 346. There is nothing, as we have already said, to indicate that, at the time of the institution of the prosecutions against appellee, appellant had any reason to believe that Shaw was untruthful or to disbelieve his statements; and, this being true, the appellant and its local counsel at Decatur had, as we have already said, a right to act upon his statements and to accept them as true. —*Jordan v. A. G. S. R. R. Co., supra; Lester v. Perryman,* 39 L. J. Ex. 177. There was no evidence tending to show that appellant, through its counsel or otherwise, had any connection whatever with the prosecution instituted against appellee for carrying knucks concealed about his person after it was begun, and it fol-

lows, therefore, that in our opinion, on the phase of the
case now under consideration, the trial court committed
reversible error in refusing to charge the jury, at appel-
lant's request, that, if they believed the evidence, they
should find for appellant as to counts 2, 3, and 4 of the
complaint.

We do not think that the question as to whether the
appellant acted with malice, either in instituting the
prosecutions upon the advice of counsel or in institut-
ing them upon the information which appellee's evi-
dence showed it had in its possession through the state-
ments of Shaw, is before us. The appellee, by his evi-
dence, conclusively showed that appellant was in pos-
session of information which it had received from Shaw,
and which constituted, as matter of law, probable
cause; and, as the appellee affirmatively proved the ex-
istence of probable cause for the institution of the pros-
ecutions, the question as to the intent with which the
prosecutions were instituted is irrelevant. On this sub-
ject, the following extract from *Walker v. S. E. Ry. Co.,
supra,* in which the italics are ours, will illustrate the
integrity of our position: "The third head of complaint
was for a malicious prosecution. The Lord Chief Baron
held that there was no proof of probable cause, but re-
served leave to the court on this point to enter the ver-
dict for the defendants. The depositions of Antonio
and the other railway servants were put in at the trial,
and they contain, as it seems to us, abundant evidence
of violent assaults upon the servants of the company
and upon Antonio in the execution of his duty as a po-
lice constable. The advisors of the company, if made
acquainted with these facts by those servants, might,
we think, as prudent and reasonable men, have given
credit to them and acted upon the facts as communicat-
ed to them. We do not understand this to be disputed,

and the ground of the Lord Chief Baron's opinion in ruling for the plaintiff seems to have been that there was no proof of any inquiry by the company into the facts or any report made to them before the inquiry took place before the magistrates so as to show that they undertook the prosecution with a *knowledge of the testimony their servants were prepared to give.* But the *onus* to show the absence of probable cause rests on the plaintiff, and in this case the plaintiff, according to a very common practice, put the depositions in evidence to show this absence. He relied on this evidence to establish the absence of probable cause, and he certainly gave *no proof* that the defendant's legal adviser did *not know* of this evidence before the company undertook to prosecute. We should be disposed to infer, if necessary, until the contrary were shown, that according to ordinary course and practice the attorney of the company would inquire into the evidence the witnesses were about to give, before he examined them in court. The attorney may well be considered to be, for such a purpose, the representative of the company, and, when the *facts stated in the depositions were communicated to him by the servants of the company, it appears to us he might, as a prudent and reasonable man,* consider there was reasonable and probable cause for the prosecution."

In the present case, the appellee, as stated above, proved, as a part of his case, that appellant's attorneys were in possession of the evidence of Shaw at the time the prosecutions were instituted, and that, under their advice, the prosecutions were immediately begun upon the reception by them of that information. In other words, every reasonable tendency of appellee's evidence was to the effect that the only information which was in possession of appellant at the time of the institution of the criminal prosecutions against appellee was the in-

formation which Shaw gave to appellant's local counsel at Decatur, and that the prosecutions were instituted upon the advice of such local counsel after Shaw had made to them a statement of all the facts which he had given or ever gave appellant, and which, if true, conclusively established appellee's guilt.

2. The next theory of appellee is that Shaw, without probable cause and with malice, instituted the prosecutions against appellee, and that appellant aided and abetted Shaw in the institution and prosecution of the cases, and that, as Shaw was guilty of malicious prosecution, the appellant, his aider and abetter therein, was also guilty. On that subject, appellee's counsel say in their brief: "The reasonable inferences or tendencies of the evidence showed that the defendant, Louisville & Nashville Railroad Company, instigated the prosecution, or the tendencies of the evidence showed that it countenanced or advised the prosecution, or advised the institution of the prosecution," etc. If appellant instigated the prosecution, then appellant was the prosecutor, and we have above discussed the evidence and the legal principles touching that phase of the case. Did, then, the appellant aid and abet Shaw in the prosecutions, and, if so, did it, in what the evidence shows it actually did under the information which the evidence shows it had, render itself liable to appellee in this action?

The ancient common law was much stricter in inflicting penalties upon intermeddlers in lawsuits than is the law of today. Says Hawkins: "It seemeth clear that whosoever assists another with money to carry on his cause, as by retaining one to be of counsel for him, or otherwise bearing him out in the whole or part of the expense of the suit, may properly be said to be guilty of an act of maintenance, as it seems to be taken for granted in the books cited in the margin. Also it is said

that not only he who lays out his money to assist another in his cause, but also that he who by his friendship or interest saves him that expense which he might otherwise be put to, or but endeavors to do so, is also guilty of maintenance, as where one persuades, or but endeavors to persuade, a man to be of counsel for another gratis. Also it is said that all such persons may properly be called maintainers, who give, or but endeavor to give, any other kind of assistance to either of the parties in the management of the suit depending between them, as by opening the evidence to the jury, or by giving evidence officiously without being called on to do it, or by speaking in the cause as one of the counsel with the party, or by retaining an attorney for him, or, perhaps, by barely going along with him to inquire for a person learned in the law."—1 Hawkins, Pleas, p. 455, §§ 4, 5, 6.

We have quoted the above for the purpose of emphasizing the strictness of the ancient common law with reference to the matter under discussion, and yet, when the above was, in all its strictness, the law of England, it was also the law that "the master may go along with his servant * * * in order to retain counsel, and that he may pray one to be of counsel for him, and also that he may go with him to the trial and stand with him and aid him while the cause is tried, but ought not to speak in the court in favor of the cause."—1 Hawkins, Pleas, p. 459, § 31. "Statutes prohibiting particular species of maintenance add penalties; but it is laid down as a fundamental authority that maintenance is not malum prohibitum, but malum in se; that parties shall not, by their countenance, aid the prosecution of suits of any kind, which every person must bring upon his own bottom and at his own expense. * * * There is a justifiable maintenance, arising from the priv-

ity of the parties in estate, or from their connection, as master and servant."—Lord Chancellor (Loughborough) in *Wallas v. The Duke of Portland,* 8 Bro. P. C. 161, English Reports (Full Reprint) vol. 30, p. 1123. It is said in Hawkins that in real actions the master may not lay out money for his servant unless he has money of his servant in his hands, in which event he might lawfully do so.—1 Hawkins, Pleas, p. 459, § 33.

We know of no law which denies to the master the right to furnish counsel, advice, and assistance to his servant when that servant becomes involved in litigation growing out of some act of his while performing his master's service. Of course, when the master assumes the responsibility of so doing, he must act in good faith, and he must not knowingly aid or abet his servant in an attempt on the part of the servant to perpetrate a wrong through the courts. In the instant case the servant left home to perform a service for the master. He came back with a disfigured face and informed the master that his injuries were received while performing the master's service, and that they were due to an unlawful assault and battery committed upon him by appellee with knucks, and that the knucks were concealed. The master furnishes him with transportation to Decatur, the county seat of the county in which the battery was committed, and advises him to see the lawyers of the master who reside there, and act upon their advice. This the servant does, and states the same facts to the lawyers, which he afterwards testifies as a witness in court, and which, if true, justifies the prosecutions. The lawyer, upon hearing the facts as stated by the servant, advises a prosecution, and the servant makes the necessary affidavits. Before the trial is had, but after the prosecutions had been commenced, the master, through its general counsel, writes a letter to

the local lawyers in Morgan county that it desires them to see the solicitor, and desires the solicitor for the state to vigorously prosecute the case for assault and battery upon the servant, and that, if the local lawyers thought it best, they were authorized to appear in that case and assist the solicitor in the trial. If the master in this case did more than this, we are unable to find it from the bill of exceptions. One of appellant's special agents was present when the affidavits were made, and some of appellant's officers seem to have written each other about the case, but the above states the true situation as we find it in the record. We find nothing in the above which a master, acting in good. faith, may not lawfully do for his servant.—*Quigley v. Thompson,* 53 Ind. 317; 1 Russell on Crimes (International Ed. 1986) 480.

The relation of master and servant existed between appellant and Shaw when the battery occurred, when the prosecutions were instituted, and when the trial was had—in fact, from the inception to the conclusion of this matter—and we have already said as there is nothing in this record indicating that the master did not believe the servant, and as there is nothing indicating that the master should not have accepted the servant's statement as true, there is nothing in the record from which a lack of good faith on the part of the master in furnishing assistance to the servant and the state can be reasonably and legally drawn.—*Walker v. S. E. Ry. Co., supra.* If the master believed the servant—and there is nothing to indicate the contrary—then, as the master had the legal right to do all that the evidence shows was actually done, the master acted in legal good faith, for, as we have already said, the law will not inquire into the motive which prompts a legal act. Indeed, in the case of *Grant v. Thompson,* 18 Cox. C. C.

100, it is said that at common law the offense of maintenance could only be committed by intermeddlers in civil actions, and that it could not be applied to acts done in criminal prosecutions.  Even under the strict interpretation of the doctrine of maintenance as it existed in England in ancient times in civil suits, however, the master, in what the evidence shows was actually done in this case, was within the protection of the law.

As was said by Mr. Justice Head in the case of *O'Neal v. McKinna,* 116 Ala. 606, 22 South. 995: "It is to the interest of the public that offenders be brought to justice; and in all cases where there is probable cause for believing a person has committed a criminal offense, the prosecution of which is demanded by the public welfare, it is a public duty on the part of any citizen sufficiently informed of the fact to take the necessary steps to bring the case to judicial investigation; and, this being so, it would be a policy pernicious to society were the law to permit the legal propriety of a prosecution supported by such probable cause to be determined by a consideration of the private motives, whatever they might be, of the party instituting it." While it certainly is not within the usual objects or powers of appellant to furnish counsel to aid the state in the prosecution of those charged with a violation of the law, it had the legal right to do so, and, as the appellee's evidence affirmatively shows that appellant had probable cause for believing the appellee guilty of the offense of assault and battery upon Shaw with knucks, we are of the opinion that upon this theory of the appellee's case the appellee was certainly not entitled to recover.

3.   The third theory upon which this case was tried in the court below was that, if appellant did not in fact

originate the criminal proceedings against appellee, it
nevertheless ratified the same and participated therein
by employing counsel to aid the solicitor in the prosecu-
tions. So far as the prosecution for carrying concealed
weapons is concerned, that question has already been
eliminated from further consideration. The appellant
did not employ counsel to prosecute that case, and there
is no evidence tending to show that it ever had anything
whatever to do with it, unless indeed it originated the
prosecution. So far as the prosecution for assault and
battery is concerned, we direct attention to the fact
that the real sufferer from the battery was Shaw, and
not appellant; that naturally Shaw may have had some
grievance against appellee on account of the assault;
and that the only interest, aside from the public interest
which every citizen should take in the proper enforce-
ment of the criminal law, that appellant had or could
have had in that prosecution was due entirely to the
relation of master and servant which existed between it
and Shaw at the time of the battery and at the time of
the trial. One of appellee's witnesses—one of the local
counsel of appellant—testified to facts which, if true,
established beyond question that the prosecution now
under discussion was instituted by Shaw of his own in-
itiative. The testimony of this witness, for the truth of
which appellee vouched, was corroborated by the testi-
mony of Shaw, by the testimony of the other local at-
torney of appellant, and also by the letter of the divis-
ion counsel of appellant which was written on July
19th, after the prosecution had been instituted, and in
which authority is given the local counsel at Decatur to
join "the solicitor in the prosecution, if you think it best
to do so." On this theory of the case, the facts are not
dissimilar to those in the above-cited case of *Walker v.
S. E. Ry. Co.,* and the questions presented by the facts

in the instant case and in that case are identical. In that case the court, on the subject now under discussion, said: "We are disposed to draw the inference in fact that Antonio, in giving the plaintiff into custody, was not acting within the scope of his employment by the company, or on behalf of or for the benefit of the company. It was further contended for the plaintiff that there was evidence that the company ratified the acts of Antonio by allowing their attorney to appear before the magistrate to conduct the prosecution. But two points arise on the question of ratification: First, there could be no ratification unless the original act was in some sense done on behalf and for the benefit of the company; and, secondly, the mere fact that the attorney of the company appeared before the magistrate to prosecute, without evidence that he knew the circumstances of the imprisonment, was not alone sufficient evidence of ratification."

In the above case, as in this case, the servants of the railroad company claimed that they had been assaulted by the parties against whom the prosecutions were being had; the attorneys for the railroad company appeared before the magistrates and conducted the prosecutions, acting in so doing upon information received from the servants; but, as the attorneys for the railroad company in that case did not become possessed of all the circumstances or facts until the trial was had, the court held, and we think properly, that there was no evidence of a ratification. In the instant case, the information, according to appellee's evidence, upon which the attorneys of the appellant acted when they appeared as prosecutors in the cases against appellee, was the information which had been given them by Shaw, and which we have already held constituted probable cause

for believing the appellee guilty of the offenses with which he was charged in said criminal cases.

The above doctrine was recognized, we think, in *Shannon v. Simms,* 146 Ala. 673, 40 South. 574. In that case, charge 5, which the Supreme Court held bad because it "fixed the liability of the defendant for the action of Chambers by a mere acquiescence, which could have been by silence, yet which would not be a ratification of the act of Chambers," was as follows: "If you are reasonably satisfied from the evidence that Chambers swore out the warrant as the representative or agent of Shannon, and the facts were made known to Shannon and he acquiesced in Chambers' act, I charge you that he thereby ratified the act of Chambers." There is no evidence in this case tending to show that appellant's counsel at the time the letter was written by the division counsel of appellant on July 29th to the local counsel at Decatur, from which we have above quoted, or at the time the local counsel at Decatur joined the solicitor in the prosecution of appellee, was possessed of any information except that which Shaw had already given them, and to the truth of which he testified as a witness on the stand.

4. To sustain his right of recovery upon either of the above three theories, the appellee must show affirmatively, by evidence sufficient to satisfy the jury trying the case, that appellant acted without probable cause and maliciously in and about what it did in the premises. This being the law of this case upon either phase of the case, and as the evidence shows affirmatively upon either phase of the case that the appellant acted upon probable cause as that subject is defined in the books, we might well have ended this opinion with its first paragraph; but, as the case may again be tried, we

thought it proper to discuss each possible phase of the testimony.

It is evident, from what we have above said, that, under the evidence in this case, in our opinion the appellant was entitled to the general charge, which it requested the trial court to give the jury, that, if they believed the evidence, they should find a verdict for the appellant.

Reversed and remanded.

NOTE.—The foregoing opinion was prepared by Judge DE GRAFFENRIED, while he was a judge of this court, and is adopted by the court.