229 So.2d 514

**BIRWOOD PAPER COMPANY, a Corp.**

**v.**

**Leonard A. DAMSKY.**

**6 Div. 540.**

Supreme Court of Alabama.

Dec. 11, 1969.

Hobart A. McWhorter, Jr. and Bradley, Arant, Rose & White, Birmingham, for appellee.

Pritchard, McCall & Jones and Victor H. Smith, Birmingham, for appellant.

**130**

HARWOOD, Justice.

This is an appeal from a judgment awarding $4,100 in damages to the plaintiff in a malicious prosecution suit.

The evidence introduced below tends to show that the Birwood Paper Company was a business that had been conducted for many years by the Allen and Damsky families. Each family owned fifty percent of the stock in the company.

As time passed, Mr. Jacob Allen became Chairman of the Board of the company, and his son Irvin Allen became President. Leonard Damsky was Vice President and Secretary and his brother Zack was Vice President and Treasurer of the company.

Strained relations arose between the Allen and the Damsky families over the operation of the company. The Allens charged Leonard and Zack Damsky with operating a competing business. This, the Damskys denied. There have been some seven or eight suits or legal proceedings instituted by the Damskys, and it is clear from the record that for some time prior to the incident involved in this suit, the Allens had made attempts to oust the Damskys from the business.

On 24 June 1965, Leonard and Zack Damsky having pledged their stock in Birwood as security for a loan with the First National Bank of Birmingham, this stock was sold at a judicial sale by the bank. The stock was purchased by the Allens which gave them ownership of the majority of the stock in Birwood.

When Irvin Allen returned to the Birwood offices after attending the stock sale, he was informed by other employees that Leonard Damsky had been removing papers and files from his office in the company's building, which office he shared with Jacob Allen. Some four file drawers of papers and documents were removed by Leonard Damsky in this proceeding. It was Leonard Damsky's contention that the papers he removed from the offices were only personal papers and not the files of the company. On the other hand, evidence presented by the defendant below was directed toward showing that Damsky had removed documents and papers pertaining to the business of the Birwood Paper Company. It is significant that later many of these papers were returned by Damsky to the Birwood Paper Company on demand of attorneys. At this time a receipt was given for these returned papers. This receipt is in handwriting, and headed, "Papers and catalogues pertaining to Birwood Paper Co. business returned by Leonard Damsky, July 23, 1965." On each page is shown "Received by Irvin Allen." These papers largely consisted of price lists from numerous companies dealing in goods apparently handled by mercantile or manufacturing paper companies.

Upon being informed that Damsky had removed papers from the files, Irving Allen called Mr. A. W. Jones, admittedly a reputable and competent attorney of Birmingham, and informed him of the situation. During this conversation it was decided that the Allens should have the locks changed on the doors of the Birwood Paper Company, and on the safe where many of the company papers were kept. This operation was carried out by locksmiths at the

behest of the Allens. It was also decided by Allen and Jones that it would be wise to have security guards posted at the Birwood Paper Company at night.

When Leonard Damsky left his office around 5 o'clock that afternoon he noticed security guards on the premises. He testified that he told his young sons of the "police" at the Birwood Paper Company and they were interested in seeing the policemen. That night he drove his sons to the paper company so they could see the policemen. While there he decided to go into the building. He found that his key would not open the lock and left the premises.

The next morning Damsky went to the Birwood Paper Company after first obtaining an ax from a neighbor's garage. Arriving at the Birwood premises, Damsky noticed a security guard. Again finding that his key would not unlock the door, he returned to his car, got the ax, came back to the door and smashed the glass part and thus entered the building. He identified himself to the security guard and gave the telephone numbers of Jacob Allen and Irvin Allen to the guard. In about 20 or 30 minutes, Irvin Allen arrived at the premises. A repair man was called to replace the glass. During this procedure, Damsky stated in effect that they had better replace the glass with cheap glass because he would follow the same procedure in entering the building if he found the doors locked again.

Irvin Allen testified to the effect that Damsky had also stated that if the safe was locked against him he would blow the safe open. In this regard, Damsky testified that he had not said he would blow the safe open but had stated that he would take whatever means he felt necessary to open the safe, and "whatever it took to get in the safe, he was going to do it."

Irvin Allen again contacted Mr. Jones and was advised to go to the courthouse and have a peace warrant sworn out against Damsky. At the courthouse Allen appeared before J. L. Smith, Jr., for the purpose of obtaining a peace warrant and executed the following affidavit:

"Personally appeared before me, the undersigned as Ex-Officio Judge of the Jefferson County Court of Misdemeanors, of Jefferson County, in and for said County (Irvin R. Allen who being duly sworn, says that Leonard A. Damsky whose name is otherwise unknown to affiant, within twelve months before making this affidavit, in said County, did threaten or is about to commit a breach of the peace *in that he threatened to destroy property of the Birwood Paper Co., Inc., a Corp.* * * * against the peace and dignity of the State of Alabama. Subscribed and sworn to before me this 26 day of June, 1965.

| J. L. Smith, Jr. | Irvin R. Allen |
| --- | --- |
| Ex-Officio Judge of the | President, Birwood |
| Jefferson County Court of | Paper Co., Inc., a |
| Misdemeanors. | Corp." |

---

Pursuant to the affidavit, the following Warrant for Arrest was issued:

"To Any Lawful Officer of Said County, GREETING,

You are hereby commanded to arrest Leonard A. Damsky and bring him before the Judge of the Jefferson County Court of Misdemeanors, at the present term of said court, to answer the State of Alabama of a charge of Breach of Peace * * * preferred by Irvin R. Allen.

"WITNESS MY HAND this 26 day of June 1965.

J. L. Smith, Jr.

"Ex Officio Judge of the Jefferson County Court of Misdemeanors."

Damsky was arrested on this warrant, taken to the sheriff's office and "booked." He remained in jail for several hours until his attorney arranged for his release on bail.

When the proceedings against Damsky were called for trial, it appears that some attempt was made to amend the affidavit by adding the words, "in that he threatened to destroy property of the Birwood Paper Company, a Corp." On motion of the defendant Damsky the warrant was quashed and the defendant discharged.

The affidavit executed by Allen charged no criminal offense in that to threaten an offense on the person or property of another is not an offense against the law for which a person may be punished. At most the affidavit showed facts upon which Damsky might have been restrained from carrying out his alleged threats by proper peace proceedings. The warrant of arrest likewise was void on its fact because it charged no offense. Howard v. State, 121 Ala. 21, 25 So. 1000.

Following the quashing of the warrant and his discharge, Damsky filled the present suit seeking damages for malicious prosecution.

The complaint contained three counts claiming $25,000 damages. Count A charged that the defendants (these appellants) maliciously and without probable cause therefor caused the plaintiff (appellee here) to be arrested under a warrant on a charge of "Breach of Peace," which charge before the commencement of the action had been judicially investigated and said judicial action ended and the plaintiff discharged. The damages claimed as a proximate consequence of the conduct of the defendants were for embarrassment, arrest, incarceration in jail, cost of bond and attorneys fees, etc., and punitive damages were also claimed.

Count B is to the same effect as Count A except the charges to Birwood Paper Company as a corporate defendant acting through Irvin Allen.

Count C is similar to Counts A and B except that it additionally alleges that the defendants acted for the unlawful and ulterior purpose of harassing the plaintiff and detering him from exercising his lawful rights pertaining to his interest in the premises occupied by Birwood, and in the business being conducted by the corporate defendant.

In the proceedings below the complaint was treated throughout by the judge as constituting a suit for malicious prosecution. We will posit our review on the basis that the complaint did charge malicious prosecution on all counts.

In the argument portions of his brief counsel for appellant has written:

"We respectfully but earnestly submit that the appellants were entitled to the general affirmative charge as requested by them under defendants' refused Charge No. 1 Tp. 16, assignment of error No. 33."

Counsel then proceeds to present his argument and reasons therefor as to why the defendants were entitled to the requested written affirmative charge. All of this argument relates to the sufficiency or insufficiency of various aspects of the evidence to establish certain necessary elements essential to support a recovery in a malicious prosecution action. These various arguments were permissibly presented under assignment 33.

Counsel for appellants have also referred to those assignments of error asserting error in the action of the court in refusing their requested affirmative charges, with hypotheses, requested as to each count respectively and to each defendant-appellant respectively. Counsel asserts, and we agree, that the same legal principles would apply respectively to these assignments as they do to assignment 33, and have requested that the arguments made under assignment 33 be considered as applicable respectively

to these individual assignments. Such request we consider appropriate and in order.

While the form of the argument portion of the brief may not altogether conform to the standards of Supreme Court Rule 9, we think the brief entirely adequate to invite our review of assignment of error 33, and the other assignments relating to the refusal of the affirmative requested charges as to each count respectively, and each appellant respectively.

One of the arguments presented under assignment 33 relates to the question of whether the appellants, individually, and in corporate form, had probable cause for attempting to procure a peace warrant.

The method for instituting proceedings before a magistrate to keep the peace is set forth in Sections 401 through 421 of Title 15, Code of Alabama 1940.

Section 402 sets forth a form of affidavit that may be used as a basis for procuring the issuance of a warrant of arrest. This form as set forth in Section 402 in parts pertinent to this review provides:

"Before me, _____, a justice of the peace (or other magistrate, setting out his name) * * * personally appeared A. B., who, being duly sworn, deposes and says that C. D. has threatened to * * * (here set forth the particular offense threatened or about to be committed) on the person or property of affiant."

Section 403 provides that if on examination by the magistrate there appears reason to fear the commission of the offense, the magistrate must issue a warrant of arrest containing the substance of the complaint, and commanding the arresting officer to forthwith arrest the person complained of and bring him before the magistrate or some other magistrate having jurisdiction of the matter.

Section 404 sets forth the form of the warrant to be issued, and commands the arresting officer to bring the person complained of before the magistrate, "complaint on oath having been made before me that C. D. had threatened to * * * (here set forth particularly the offense threatened or about to be committed) on the person' or property of _____."

A mere glance at the affidavit made by Allen necessarily leads to the conclusion that it was made as a basis for instituting peace proceedings. Allen deposed that Leonard A. Damsky "did threaten or is about to commit a breach of the peace in that he threatened to destroy property of the Birwood Paper Co., Inc., A Corp." This affidavit does not charge a criminal offense.

Did Allen have probable cause for making the affidavit?

Upon returning to the Birwood offices from the judicial sale of the Damskys' stock in Birwood, Allen was informed that Leonard Damsky had been removing Birwood files and papers from the offices. In fact four file drawers of papers and documents had been removed by Damsky. While it was Damsky's testimony that he had removed only personal papers, evidence presented by the appellants tended to show that many of the papers so removed were papers of Birwood Paper Company and were necessarily a part of the operation of Birwood's business.

While Damsky at the time was a stockholder and official of Birwood, such status would not give him legal warrant for removing papers belonging to Birwood from the Birwood offices.

But regardless of whether the papers removed by Damsky were his personal papers or papers of Birwood Paper Company, Allen was informed by employees of Birwood that Damsky had removed papers belonging to Birwood from the company's offices. He himself knew that papers belonging to Birwood and used in the operation of the business had been kept in the now empty file drawers.

■ Information received from apparently respectable persons and believed to be credible as to the commission of an offense is sufficient evidence of probable cause. Louisville and Nashville R. R. Co. v. Stephenson, 6 Ala.App. 578, 60 So. 490.

But Allen did not act at this time other than to consult his attorney. As a result of this consultation the locks on the Birwood building and on the safe were changed, and security guards were employed.

The following morning Damsky made his entrance into the Birwood building by smashing the glass in a door with an ax he had brought with him. During the time the glass in the door was being replaced, Damsky admittedly made a statement to the effect that cheap glass be used as a replacement because he would follow the same procedure in entering the building if he found the doors locked again. Damsky also stated he would take whatever steps he felt necessary to open the safe. While Allen testified that Damsky had stated he would blow the safe open or dynamite it, this difference in the versions of this threat is immaterial insofar as it goes to creation of probable cause, for under Damsky's testimony he threatened to open the safe by whatever steps were necessary.

After the above occurrences and statements, Allen again called his attorney and reported the matters to him. Jones advised Allen to go to the courthouse and procure a peace warrant and have Damsky placed under a peace bond. Jones arranged to have a warrant clerk come to the courthouse in order to issue a warrant.

Our statutes pertaining to peace proceedings are in restraint of liberty and penal in nature. Wyatt v. State, 35 Ala. App. 147, 46 So.2d 837. The principles to be applied in malicious prosecution suits are therefore those principles developed in malicious prosecution suits growing out of criminal prosecutions initiated by the defendant in the malicious prosecution suit.

■ The essential elements to be averred and proven in a malicious prosecution suit growing out of a prior criminal prosecution initiated by the defendant in the malicious prosecution suit are, (1) a judicial proceeding initiated by the defendant, (2) without probable cause, (3) malice on the part of the defendant, (4) termination of the judicial proceedings favorable to the plaintiff, and (5) damages. Crim v. Crim, 39 Ala.App. 413, 101 So.2d 845; Sanders v. Davis, 153 Ala. 375, 44 So. 979; Boothby Realty Co. v. Haygood, 269 Ala. 549, 114 So.2d 555.

■ There must be a concurrence of lack of probable cause, and malice. Brown v. Master, 104 Ala. 451, 16 So. 443; Dent v. De Arman, 211 Ala. 189, 100 So. 122. If probable cause exists for instituting the proceedings, even though they be wrongfully and maliciously instituted, an action for malicious prosecution must fail. Brown v. Master, supra.

It is therefore immaterial whether Allen, at the time he sought to institute peace proceedings against the appellee also sought to institute similar proceedings against appellee's brother Zack Damsky.

■ " 'Probable cause' as the term is employed in actions for malicious prosecution, is such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty." Hanchey v. Brunson, 175 Ala. 236, 56 So. 971; Republic Steel Corp. v. Whitfield, 260 Ala. 333, 70 So.2d 424; Jordan v. Wilson, 263 Ala. 625, 83 So.2d 340.

■ The facts which we have set out above are admitted or undisputed. Under such circumstances the question of probable cause is for the court. Birmingham R. L. & P. Co. v. Ellis, 5 Ala.App. 525, 58 So. 796; McMullen v. Daniel, 229 Ala. 194, 155 So. 687; Elliott v. Caheen Bros., 228 Ala. 432, 153 So. 613; Brackin v. Reynolds, 239 Ala. 419, 194 So. 876. The question is

not whether the plaintiff was guilty of the thing charged, but whether the defendant acted in good faith on the appearance of things. Parisian Co. v. Williams, 203 Ala. 378, 83 So. 122.

We hold that under the undisputed facts developed in the trial below the appellees had knowledge of such facts as to lead a man of ordinary caution and prudence to entertain an honest suspicion that Damsky was threatening or about to do harm to the property of the Birwood Paper Company. Such situation, as a matter of law, constituted probable cause for Allen's attempt at preventing such wrong.

An action of malicious prosecution is not favored in the law. This, for the reason that anyone who has reasonable cause to believe that there is reasonable cause for legal redress and protection has a lawful right to seek such redress without risk of being sued and having to respond in damages for seeking unsuccessfully to enforce his rights. Boothby Realty Co. v. Haygood, 269 Ala. 549, 114 So.2d 555.

However, counsel for appellee argues that lack of probable cause must be deemed to result in Allen's attempting to continue the prosecution on the day the cause came on for hearing in the court from which the warrant had issued.

In this regard the evidence shows that at this hearing Allen and Jacob Allen, accompanied by Mr. Jones were present

The "Judges Trial Sheet" of the Jefferson County Criminal Court reflect that at this hearing: "Complaint (affidavit) amended by adding the words 'in that he threatened to destroy the property of Birwood Paper Co., a Corp.'

"The defendant refiles his motion to quash.

"Motion to quash granted and defendant is discharged."

On cross examination of Allen, he was asked if after conferring with Mr. Jones he had undertaken to amend the complaint. Allen replied, "There was some question raised at this time, and I don't know exactly what the amendment was." Allen was then asked if he had voluntarily undertaken to have the "charges" he had brought against Leonard Damsky dismissed. To this Allen replied, "Mr. McWhorter, the situation was with counsel and whatever the advice of counsel was, I abided by it."

Clearly the amendment to the affidavit was directly under the supervision and advice of Mr. Jones. In this setting it cannot be deemed that Allen was not acting under advice of counsel, or that lack of probable cause could rationally be inferred fom this instance.

Advice of counsel honestly sought and acted on in good faith is a complete defense to an action for malicious prosecution. Steed v. Knowles, 79 Ala. 446; Dent v. De Arman, 211 Ala. 189, 100 So. 122. "Such advice, honestly sought and honestly acted on, supplies the indispensable element of probable cause." Ex parte Kemp, 202 Ala. 425, 80 So. 809.

Counsel for appellants further argues that the court erred in denying appellants' requests for the affirmative charges with hypotheses for the reason that Allen's affidavit on which the warrant was issued by the magistrate charged no criminal offense, but sought only a warrant pursuant to peace bond proceedings, and the issuance of the warrant of arrest by the magistrate directing the arrest of Damsky as though a criminal offense had been charged was the act of the magistrate mistakingly done, and for which Allen was not liable in malicious prosecution.

In Lunsford v. Dietrich, 93 Ala. 565, 9 So. 308, it is stated:

"It may be conceded that had the prosecutor made a statement in writing of real facts * * * under oath, to the justice of the peace, and the latter had misconceived the remedy or process adapted to or issuable thereon, without suggestion

or intervention by the defendant, the latter would not be liable for such error of the officer." ·

In Chambliss v. Blau, 127 Ala. 86, 28 So. 602, a malicious prosecution suit, Blau had gone before a magistrate and made an affidavit that Chambliss "did enter his premises and carried away a lot of fodder of the value of five dollars." The magistrate, after Blau had departed, issued a warrant charging Chambliss with larceny. Later Chambliss was discharged by the magistrate who issued the warrant. Chambliss thereafter sued Blau for malicious prosecution. The lower court gave the defendant's requested affirmative charge. In affirming this action this court wrote:

"* * * The magistrate as appears, committed a mistake and transcended his authority in issuing such a warrant on the information given him and the affidavit made by defendant. There can, therefore, be no recovery against defendant on account of such a mistake made by the magistrate in issuing a warrant against plaintiff for larceny. This disposes of counts 1 and 2 of the complaint. Hahn v. Schmidt, 64 Cal. 284, 30 P. 818; Newman v. Davis, 58 Iowa 447, 10 N.W. 852; Lark v. Bande, 4 Mo.App. 186; Frankfurter v. Bryan, 12 Ill.App. 549."

Statements of the law to this same effect may be found in 34 Am.Jur., Malicious Prosecution, Section 23, p. 716, and 54 C.J. S. Malicious Prosecution § 16, p. 968, wherein numerous citations from other jurisdictions supporting the text may be found.

Counsel for appellee contends that:

"The fact that the affidavit does not support the charge, or that the charge is not supported by the affidavit or amended affidavit, does not excuse defendants from their affirmative acts in intentionally precipitating the arrest and proceedings against plaintiff."

Counsel in this regard cite Shannon v. Sims, 146 Ala. 673, 40 So. 574; Sandlin v. Anders, 187 Ala. 473, 65 So. 376; Hotel Supply Co. v. Reid, 16 Ala.App. 563, 80 So. 137, and Nesmith v. Alford, 5 Cir., 318 F.2d 110. We find nothing in Nesmith v. Alford, supra, that we consider applicable.

In Shannon v. Sims, supra, the affidavit on which the warrant was issued was defective in not averring "probable cause for believing" that an offense had been committed, and in Sandlin v. Anders, supra, the affidavit was defective but set forth such facts that a fair interpretation left no doubt that it was intended to charge larceny because it stated that trees were feloniously severed and carried away.

In both cases the evidence was in conflict as to the existence of probable cause. This, of course, created a question for the trier of fact on this issue.

In such a situation, if the trier of fact determines that the original prosecution was without probable cause, and prompted by malice, then a technical defect in the affidavit will not avail if the facts stated are sufficient to entitle the proceedings to be called a prosecution.

In other words, where it is shown that a prosecution is prompted by malice and *without probable cause*, and there is a "colorable invocation of jurisdiction resulting from a statement in the affidavit of facts which bear some general similitude to an offense designated by law as an offense, then an action for malicious prosecution will lie despite the technical defects in the affidavit." See Hotel Supply Co. v. Reid, supra.

The appellee's contention is untenable in the present case because, (1) there was probable cause for Allen seeking a peace warrant, and (2) the statement of facts made by Allen in his affidavit bore no similitude to any criminal offense. The act of the magistrate in issuing a warrant for a purported though nonexisting criminal offense was therefore the act of the magistrate and not the act of Allen.

We consider the contention of the appellant in this aspect to be meritorious.

Counsel for appellees contends that omission of a notice of appeal to Irvin Allen, a co-defendant, should cause a dismissal of this appeal because of failure to comply with Section 804, Title 7, Code of Alabama 1940, relative to issuance of notice of appeal to co-defendants who do not join in an appeal. A motion to this effect was timely filed.

A supersedeas bond was timely filed and approved by the clerk below. This bond was executed by Birwood Paper Company, a Corporation, by its President, Irvin R. Allen, and by Irvin R. Allen, individually, and by Travelers Indemnity Company.

The record also shows that the assignment of errors were by Birwood Paper Company, and Irvin R. Allen, as "defendants-appellants."

An appeal from a judgment or decree may be shown, among other methods, by giving and having approved a supersedeas bond conditioned as required by law. Section 766, Title 7, Code of Alabama 1940.

The filing and approval of the supersedeas bond signed by Allen individually rendered unnecessary for summons or notice of appeal to issue by the clerk notifying Allen of the appeal, and was a waiver by him of such notice. Smith v. Collier, 210 Ala. 23, 97 So. 101. Further, Allen joined with Birwood in the assignment of errors. The effect of this action was an unqualified appearance and a waiver of summons or other notice of appeal. Shaddix v. Wilson, 261 Ala. 191, 73 So.2d 751; Louisville and N. R. Co. v. Shikle, 206 Ala. 494, 90 So. 900.

The motion to dismiss on the above discussed ground is denied.

Another ground of the motion to dismiss the appeal is the alleged failure of appellants' brief to meet the requirements of Supreme Court Rule 9. We have already discussed the sufficiency of the appellants' brief as it relates to the assignments of error pertaining to the refusal of the affirmative charge requested generally, and as to each count of the complaint, and each appellant, respectively. We hold this ground of the motion to be inefficacious to support the motion to dismiss.

We hold that the court erred in refusing the appellants' requested charges which were affirmative in nature. This judgment must therefore be reversed.

Several other points are argued in appellants' brief. Without intimating merit, or lack of merit in these points, we see no need of discussion inasmuch as what we have written disposes of this appeal.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, MERRILL and MADDOX, JJ., concur.