MOORE, Judge.
Kenneth Cory Hughes (“Cory”) appeals from a summary judgment entered by the Mobile Circuit Court (“the trial court”) in his malicious-prosecution action against Christopher Allen Wallace (“Chris”). Because we find that genuine issues of material fact' exist as to whether Chris had probable cause to prosecute a criminal-harassment charge against Cray and whether Chris acted with malice in prosecuting that charge, we reverse the summary judgment and remand the case.

Factual and Procedural Background

At one time, Chris was married to Kimberly Michelle Hughes (“Kimberly”), Cory’s current wife. A court ■ awarded Chris sole physical custody of the children from his marriage to Kimberly. Kimberly exercised overnight visitation with one of the children of that marriage, a two-year-old son, at her home on February 22, 2012. The next afternoon, Chris drove to Cory and Kimberly’s home to pick up the son. Kimberly carried the son out to the front yard to meet Chris.
According to Chris, during the exchange of their son, Chris questioned Kimberly as to why she had failed to answer her telephone the night before when Chris had called. While the two were having what Chris described as a “civil conversation,” Chris testified, Cory suddenly burst *195 through the front door of the house, came out into the front yard, got between Chris and Kimberly, and ordered , Chris to leave. Chris testified that, at that point, Kimberly implored Cory to leave Chris alone,, but Cory persisted to direct Chris to leave the premises in a threatening manner, causing the two-year-old child to become upset and to start crying. Chris stated that he immediately took his son to his. automobile and placed him in a safety' seat with much effort due to the child’s being upset and panicked. Meanwhile, according to Chris,’ Cory followed him every step to the automobile and stood over him in close proximity while Chris struggled to secure the child in the safety seat. Chris testified that Cory presented himself in “a very threatening uncontrollable manner,” which Chris interpreted as an attempt by Cory to antagonize him and' which, Chris said, caused him to fear for his and his child’s safety.
Chris filed a complaint with the City of Mobile’s magistrate, who, based purely on Chris’s summary of the events, issued a writ of arrest for Cory pursuant to Ala. Code 1975, § 13A-11-8. That Code section provides, in pertinent part:
“(2) For purposes of this section, harassment shall include a threat, yerbal or nonverbal, made with the intent to carry out the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety.”
At the criminal trial on May 21, 2013, the Mobile City Court judge received testimony solely from Chris that was consistent with the summary set forth above; she subsequently .granted Cory’s motion for a judgment of acquittal based on there being a lack of evidence that Cory had intended to harm Chris.
Cory filed a civil action against Chris alleging malicious prosecution on October 1, 2013. On June 5, 2014, Chris took the depositions of Cory and Kimberly. Kimberly testified that, after she. gave .the child to Chris, Chris accused her of intentionally violating a court order requiring her to allow Chris telephone access to the child during visitations. She testified that, as Chris was “going on and on,” she had stood'there listening with-her arms across her chest and • that,, at that point, Cory came out of the house and told Chris he needed to be more respectful, that he needed to quit yelling at Kimberly, and that he needed to leave. Kimberly said that she asked Cory to go back inside the house but that he did not do so. According to Kimberly, Chris did not immediately leave but, -rather, continued to accuse Kimberly of being in contempt of court and of lying, leading' Cory to reiterate that Chris needed to leave the premises. «At that point, Kimberly testified, she went inside the house. A few minutes later, Kimberly said, she' returned to the front yard and observed-Chris carrying their crying child toward Chris’s automobile, which was parked in- the driveway. According to Kimberly, <Cory followed Chris to a position approximately three or four feet from the driveway, telling Chris he needed to leave and not come back. Kimberly testified that Chris then placed the child in the car seat, got into the driver’s seat, backed out of the driveway real fast, stopped just short of the street, yelled at Kimberly “You’ll never bleed me dry,”, and then “peeled off.”
' Cory testified that, while he was in the bathroom, hie heard a male voice screaming in the front yard, that he walked to the front door of the house, and that, upon opening the door, he observed Chris, who, Cory said, was inches froto Kimberly’s face, yelling while holding the child in his left arm and pointing a right" finger in' Kimberly’s face. According to Cory, Chris noticed Cory and took two steps back and *196 Cory then got in between Chris and Kimberly, after which Chris took another step back. Cory stated that, without raising his' voice, he suggested that Chris leave the property, but, Cory said, Chris continued to argue that Kimberly was in contempt of court and that he could do whatever he wanted to do. According to Cory, some minutes later, Chris finally walked to his automobile and placed the upset child in the safety seat. Cory testified that Chris then emerged from the automobile, at which point, Cory said, he again told Chris to leave and they “faced off’ with Cory repeating that Chris needed to leave. Cory testified that Chris ultimately got into his automobile and left in- the manner described by Kimberly.
On August 12, 2014, Chris filed a motion for a summary judgment. Cory filed a response to the motion on September 10, 2014. The trial court conducted a hearing on the motion on September 12, 2014, and granted the motion that same date. On October 12, 2014, Cory filed a motion to alter, amend, or vacate the summary judgment, which the trial court denied on October 27, 2014. Cory timely appealed on November 7, 2014.

Analysis

On appeal, Cory argues that the trial court erred in entering a summary judgment for Chris because, he says, he presented sufficient evidence of malicious prosecution. We review the summary judgment de novo and determine for ourselves whether Chris was entitled to the judgment; in making that determination, we use the same standard applied by the trial court under Rule 56, Ala. R. Civ. P., without affording the trial court’s judgment any presumption of correctness. See Ravenel v. Burnett, 5 So.3d 592, 597 (Ala.Civ.App.2008).
In order for a claim of malicious prosecution to be submitted to a jury, the plaintiff must present substantial evidence demonstrating
“(1) that a prior judicial proceeding was instituted by the present defendant, (2) that in the prior proceeding the present defendant acted without probable cause and with malice, (3) that the prior proceeding ended in favor of the present plaintiff, and (4) that the present plaintiff was damaged as a result of the prior proceeding.”
Delchamps, Inc. v. Bryant, 738 So.2d 824, 831-32 (Ala.1999). At this juncture, the parties do not dispute the first, third, and fourth elements, but they disagree as to the second element.
“ ‘Probable cause is defined as “ ‘[a] reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged.’ ” ’ Eidson v. Olin Corp., 527 So.2d 1283, 1285 (Ala.1988) (quoting Parrisian Co. v. Williams, 203 Ala. 378, 383, 83 So. 122, 127 (1919)). ‘ “The question is not whether the [malicious prosecution] plaintiff was guilty of the thing charged, but whether the [malicious prosecution] defendant acted in good faith on the appearance of things.” ’ Eidson, 527 So.2d at 1285 (quoting Birwood Paper Co. v. Damsky, 285 Ala. 127, 134-35, 229 So.2d 514, 521 (1969)). Our supreme court has stated:
‘“The test that this Court must apply when reviewing the lack-of-probable-cause element in a malicious prosecution case in which summary judgment has been granted to a defendant is as follows: Can one or more undisputed facts be found in the record below establishing that the defendant acted in good faith on the appearance of things as they existed when suit was filed, based upon *197 direct evidence, or upon circumstantial evidence and inferences that can reasonably be drawn therefrom? If so, then summary judgment in favor of the defendant on plaintiffs malicious prosecution count would be appropriate.’
“Eidson, 527 So.2d at 1285-86. In other words, ‘[i]f there are any undisputed facts of record establishing that [the defendant] had probable cause to bring the former action ... against [the plaintiff], then [the plaintiff] cannot recover for malicious prosecution and summary judgment is appropriate.’ Eidson, 527 So.2d at 1285.”
Ravenel, 5 So.3d at 598.
In his motion for a summary judgment, Chris asserted that Cory’s manner of speaking and “nonverbal cues” led Chris, acting as “a man of ordinary caution and prudence to entertain an honest suspicion that [Cory] was threatening or about to do [him] harm,” Birwood Paper Co. v. Damsky, 285 Ala. 127, 135, 229 So.2d 514, 521 (1969), thus giving him probable cause to file his complaint against Cory for criminal harassment. Cory further argued that it was not him, but the Mobile City magistrate, who determined that probable cause existed to charge Cory with the particular crime of criminal harassment “based upon [Chris’s] recitation of the facts.”
However, Chris overlooks that the testimony of Cory and Kimberly disputes some of the material facts upon which the criminal-harassment charge was based. In their version of the confrontation, Chris became belligerent with Kimberly, leading Cory to step in between the two to protect Kimberly by directing Chris, in a calm, but unwavering, manner, to leave the premises. According to Cory and Kimberly, Chris was the antagonist and Cory did nothing of a nature that would lead a reasonable person to believe that he was threatening Chris with harm by merely firmly assuring that Chris would leave the premises. Although a jury could believe Chris’s testimony that Cory acted threateningly, a- jury could also believe Cory’s and Kimberly’s testimony that Cory did nothing, either verbally or .nonverbally, to harass Chris as Chris claimed but, rather, that Cory merely acted defensively to show Chris that he and Kimberly would not suffer any intimidation. If so, the jury could find that Chris had misrepresented or suppressed the facts to the magistrate in order to obtain the arrest warrant. See Cutts v. American United Life Ins. Co., 505 So.2d 1211, 1215 (Ala.1987) (quoting Alabama Power Co. v. Neighbors, 402 So.2d 958, 964 (Ala.1981), quoting in turn Dismukes v. Trivers Clothing Co., 221 Ala. 29, 32, 127 So. 188, 190 (1930)) (“ ‘ “Giving information of a crime to officers, or a request that the officers investigate a crime is not aiding or abetting or instigating a prosecution, unless such information was a misrepresentation of the facts in order to induce action, or there was a suppression of known material facts.” ’”).
From that same evidence, the jury could reasonably infer that Chris acted with malice in bringing the criminal charges against Cory.
“Malice in a malicious prosecution action has been defined as whatever is done willfully and purposely, whether the motive is to injur[e the] accused, to gain some advantage to the prosecutor, or through mere wantonness or carelessness, if at the same time wrong and unlawful within the knowledge of the actor. Gulsby v. Louisville & Nashville RR Co., 167 Ala. 122, 52 So. 392 [(1910)].”
Dillon v. Nix, 55 Ala.App. 611, 613-14, 318 So.2d 308, 310 (Civ.App.1975). A jury may infer legal malice from substantial evidence indicating that the defendant mis *198 represented the facts to procure the prosecution of the civil plaintiff. See National Sec. Fire & Cas. Co. v. Bowen, 447 So.2d 133, 140 (Ala.1983). Likewise, a jury may infer legal malice from substantial evidence indicating that the defendant instituted a criminal action against the civil plaintiff without probable cause. See Grantham v. Bynum, 48 So.3d 657, 662 (Ala.Giv.App.2010).
Chris argues that the record contains no evidence indicating that he falsified his report to the magistrate; rather, he says, all of the evidence shows that he told the truth because, he says, he repeated the exact statement when he testified in the criminal trial and Cory and Kimberly verified his account. However, just because Chris has consistently stated his version of events does not mean that he must be telling the full truth, and, as set out above, Cory and Kimberly do not agree with Chris on the most salient point — -that Cory was verbally or nonverbally threatening Chris. A jury reasonably could give credence to their conflicting accounts of the events and conclude that Chris, although he has consistently told the same story, embellished certain facts in order to paint Cory as an aggressor. As Chris himself appears to acknowledge in his brief to this court, the parties are involved in a “swearing match” as to the material events of February 23, 2012. Hence, the question whether Chris acted with probable cause and without malice essentially amounts to a question regarding the credibility of the witnesses, making the summary judgment improper. See Ravenel, 5 So.3d at 600 (holding that a court may not make a credibility determination on a motion for a summary judgment in a malicious-prosecution action).
For the foregoing reasons, the summary judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ„ concur.