101 So.2d 845

### C. R. CRIM

v.

### Mrs. R. D. CRIM.

7 Div. 442.

Court of Appeals of Alabama.

April 1, 1958.

415

Wales W. Wallace, Jr., Columbiana, for appellant.

Paul O. Luck, Columbiana, for appellee.

CATES, Judge.

The appellant (C. R. Crim) was the losing defendant in an action brought against him by a relative by marriage, Mrs. R. D. Crim, which arose out of an alleged malicious prosecution in a case in the County Court of Shelby County in which he swore out a warrant against her for a violation of Code 1940, T. 3, § 95. This statute reads, in pertinent part, as follows:

"Any person or persons owning or having the possession, custody or control of any live stock, who *unlawfully and knowingly* permit the same to run or be at large * * * shall be guilty of a misdemeanor, and on conviction, shall be fined not less than double the damages sustained by the injured party or parties, but in no case more than fifty dollars, one-half the fine to go to the injured party or parties, the fine to be paid in lawful money of the United States; and may also be imprisoned in the county jail, or sentenced to hard labor for the county for a term not exceeding six months, at the discretion of the court or jury trying the case." (Italics ours.)

The docket entry which was introduced in evidence, without objection, contained the following entry: "1/3/55 On hearing the evidence in this Case Dismissed."

Mrs. Crim claimed $10,000 as damages, and a jury in the circuit court in the instant action awarded her $750.

The criminal proceedings arose because C. R. Crim discovered some cattle, particularly two black yearling steers, running over his land. He relied on hearsay for the proposition that Mrs. Crim was the owner of these animals; or, alternatively, while they might have belonged to Mrs. Crim's son, Forest, he, Forest, being absent from the home place (he testified he traveled in the far East on secret missions for the Federal Government from his base of operations in Mobile), nevertheless she looked after and tended the animals.

Mrs. Crim took the stand as the first witness and testified that she was some seventy-six years of age, and had lived on a farm owned by her husband near Longview; that she was arrested on a warrant sworn out by the defendant on the 1st day of December, 1954, by a deputy sheriff, and tried in the county court with the outcome as above indicated. On direct examination, she testified that she did not own or possess or have in possession any livestock at this time.

On cross-examination, she related that her son had twenty-one yearlings and a cow and four little baby calves on her husband's place. She admitted that she knew the number of the herd, by reason of the fact that she counted them when she fed them, though she added that she did not feed them all the time, but only when her husband was not able to get down to the feeding place. On redirect examination as to the feeding of the cattle, she stated that she fed them, "At the cow barn, and the feed was upstairs and I didn't have anything to do but take my hand or foot and rake it down in the trough downstairs so the cows could eat. Q. You say you did that a few times while Mr. Crim wasn't there? A. Yes."

Mrs. Crim's brother, Mr. Edgar McGiboney, stated that he was the person who had the duty of looking after the cows; that there might be times when he would miss getting over to Longview from his home in Montevallo to feed the animals, and he assumed that his brother-in-law, Mr. R. D. Crim, did the feeding; and that he did not know of his sister ever feeding them.

Mr. Forest Crim took the stand. His testimony was to the same effect, adding that he had hired his uncle, Mr. McGiboney, to look after the animals. On being asked on cross-examination how much he paid him, his first answer was, "That don't have anything to do with it." Upon being ordered by the court to answer, he then continued, "I paid him a reasonable sum." Being pressed further, he said, "Say $5.00 a month." His testimony went on to demonstrate that his mother had no interest in the animals.

The defendant, while being unable to make out a case which would have shown that Mrs. Crim held title to the animals, nevertheless adduced proof of her showing some interest and concern in and about their feeding; and, indeed, one witness testified as to a conversation with her from which an admission of ownership could be inferred.

The tendencies of the evidence are quite evenly balanced as far as the issue of the merits of the defendant's being justified or not in suing out the warrant. There was also testimony of a land dispute.

However, we have come to the result that the plaintiff failed to adduce sufficient evidence for the case to have been submitted to the jury on one of the elements of the tort here involved, i. e., *want* of probable cause. It is our view that the plaintiff had the burden of bringing in evidence which would negative probable cause on the part of the defendant, and unless and until this is done, the components of the tort have not been shown, and the case is not due to go to the jury.

The elements of this tort, succinctly put, are malice and want of probable cause. The averments of pleading to

establish it are commonly said to be: "First, a judicial proceeding; second, that it was instigated by the defendant; third, want of probable cause; fourth, malice; fifth, the termination of the judicial proceeding favorably to the plaintiff; and, sixth, the damage." Sanders v. Davis, 153 Ala. 375, 44 So. 979, 981; see also Birmingham Bottling Co. v. Morris, 193 Ala. 627, 69 So. 85.

As to the proof of the absence of probable cause for the prosecution, "It is not enough that accused is innocent and has been proven to be so. The plaintiff must go further and show that there was no probable cause for thinking that he was guilty." Street, Foundations of Legal Liability, Vol. I, pp. 329–330.

Acquittal is not even prima facie evidence of lack of probable cause, Republic Steel Corp. v. Whitfield, 260 Ala. 333, 70 So.2d 424.

The expression "probable cause" has been defined in Lunsford v. Dietrich, 93 Ala. 565, 9 So. 308, 310, " 'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged.' "—citing Davie v. Wisher, 72 Ill. 262. Alternatively, in that case, the court quoted from Jordan v. Alabama Great So. R. Co., 81 Ala. 220, 8 So. 191, " 'probable cause is such a state of facts and circumstances as would lead a man of ordinary caution and prudence, acting conscientiously, impartially, reasonably, and without prejudice, to believe that the person accused is guilty.' "

We conclude that the plaintiff failed to show the absence of the outward trappings of the state of mind of the defendant *at the time he swore out the warrant,* showing either (1) that the defendant *knew* the cattle were not owned, possessed, or in the control or custody of the plaintiff;

or (2) that there was no circumstance from which a reasonable man could have inferred that they were.

We have come to this conclusion under the rules announced in Alabama Dry Dock & Shipbuilding Co. v. Bates, 33 Ala.App. 81, 30 So.2d 273, 275:

"In the instant case, upon the plaintiff rested the burden of proving both malice and lack of probable cause. Veid v. Roberts, 200 Ala. 576, 76 So. 934; Brackin v. Reynolds, 239 Ala. 419, 194 So. 876.

"Proof of the acquittal in the circuit court was not prima facie evidence of want of probable cause. This rule is based on logic and fairness.

"In Lunsford v. Dietrich, 93 Ala. 565, 9 So. 308, 310, 30 Am.St.Rep. 79, probable cause is defined as follows: 'A reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged.'

"See also: Gulsby v. Louisville & N. R. Co., 167 Ala. 122, 52 So. 392.

"It follows as a reasonable and observative deduction that a person may in good faith entertain all of the necessary requisites of probable cause and on this basis institute a prosecution, and, neverthless, the accused may be acquitted of the charge. If it were not so, there could be a serious determent to the enforcement of our criminal laws."

We realize that the action for malicious prosecution requires a nicety in balancing two social policies: the restraining of conduct which some writers have called an extension of defamation by way of harassment through legal process; and,

on the other hand, the justifiable and commendable encouragement which the law gives to citizens to come forward when they have grounds for believing there has been a serious breach of social conduct. See introductory note, Chapter 29, Restatement of the Law, Torts, Part I. We feel that in a conflict between the two principles, if the scale is evenly balanced, then it should be tipped in favor of the person who seeks enforcement of the criminal laws since they are enacted for the protection of everyone.

We have also noted in this consideration that the defendant first went to the county solicitor before swearing out the warrant, and this evidence, though possibly only of a defensive nature, illustrates the failure of the plaintiff to negative the probable cause in the defendant's conduct. See Baker v. Barach, 297 Mich. 219, 297 N.W. 472. We would be inclined to ascribe a higher degree of immunity from this tort action where the matter has been laid before a public prosecutor (who, for instance, has the power to nol pros) than we would where only a private attorney had been consulted. Cf. McLeod v. McLeod, 73 Ala. 42; O'Neal v. McKinna, 116 Ala. 606, 22 So. 905. Of course, proof of bad faith in laying the matter before the solicitor would avoid the defense. Torian v. Ashford, 216 Ala. 85, 112 So. 418.

We consider that the appellant's assignments which cite the failure to give the defendant the affirmative charge as requested in writing, together with the denial of defendant's motion for new trial, which also raised this same question, specify reversible error on the part of the trial court.

Accordingly, the judgment below is due to be reversed and the cause remanded there for a new trial.

Reversed and remanded.