114 So.2d 555

### BOOTHBY REALTY CO.

v.

### Carrie M. HAYGOOD.

6 Div. 402.

Supreme Court of Alabama.

Sept. 17, 1959.

J. Robt. Huie and J. Terry Huffstutler, Birmingham, for appellee.

McGowen & McGowen and Manly & Manly, Birmingham, amici curiae, on behalf of appellant.

MERRILL, Justice.

Appellee, Carrie M. Haygood, brought suit against the Boothby Realty Company, a Corporation, appellant, for maliciously and without probable cause therefor causing appellee to be prosecuted in a civil suit in the Municipal Court of Birmingham upon a charge of nonpayment of rent under a lease agreement. A judgment for appellee was set aside on motion for a new trial. The case was tried again and appellee was awarded damages in the amount of $4,500. The trial court ordered a remittitur reducing the judgment to $2,000, which remittitur was filed by appellee.

The tendencies of the evidence are that Mrs. Haygood had been a tenant of Boothby Realty Company for some time prior to September 26, 1955, when she consulted her attorney, Mr. J. Robert Huie, and requested

Wm. M. Acker, Jr., Smyer, White, Reid & Acker, Birmingham, for appellant.

him to learn from Boothby Realty Company under what terms and conditions she could vacate the said apartment before the expiration of her current lease. Mr. Huie had a telephone conversation with Mr. James H. Roberts, Vice-President of Boothby Realty Company, while Mrs. Haygood was in his office and there resulted from the conversation a letter written by Mr. J. Robert Huie in behalf of Mrs. Haygood authorizing Boothby to sublease the apartment occupied by Mrs. Haygood. Under date of December 23, 1955, Boothby Realty Company wrote Mrs. Haygood advising that they would be glad to quote her apartment for February 15th occupancy with the provision that she would be responsible for the apartment until a new lease was signed, plus three per cent of the unexpired lease or a minimum of $5, whichever was greater.

Subsequently, Mrs. Haygood received another letter from Boothby Realty Company advising that her apartment had been re-rented as of March 22, 1956. The letter requested that she remit rent through March 21st, plus three per cent. of the unexpired lease, amounting to $49.08. Mrs. Haygood sent her check to Boothby Realty Company in the amount of $49.08 on March 12, 1956. The check was accepted and cashed by Boothby Realty Company. Mrs. Haygood moved on March 21, 1956.

Boothby Realty Company rented Mrs. Haygood's apartment to Mrs. Bernice R. Webb, who signed a lease identical to the lease which had been in effect with Mrs. Haygood. Mrs. Webb paid the sum of $18.58, as rent on the apartment, to Boothby Realty Company at the time she signed the lease.

Mrs. Webb told Mr. Roberts that she would expect the apartment to have been redecorated and the floors sanded when she began occupancy on March 22nd and she received assurance that these requirements would be met. Based upon this assurance, she executed the lease and made the deposit. When March 22nd arrived, the redecoration had not commenced and the apartment was not ready. Mrs. Webb made other arrangements and requested that her money be returned, which appellant did. The apartment was re-rented to a third party on April 15, 1956. Mr. Roberts presented the entire file and the facts and circumstances surrounding the transaction to appellant's attorney, who advised the appellant that it had a cause of action against Mrs. Haygood for the unpaid rent under her lease up to April 15th.

Suit was filed in the Municipal Court of Birmingham and at the trial, the parties were present and testified and judgment was rendered for appellant. On appeal to the circuit court, the jury found in favor of the appellee.

The principle conflict in the evidence is exactly what took place in a telephone conversation between Mr. Roberts and Mrs. Haygood. Mr. Roberts testified that he called Mrs. Haygood over the telephone while Mrs. Webb was present in his office and explained that the redecorating and floor sanding would have to be completed by March 22nd, and that Mrs. Haygood agreed to vacate the apartment on March 15th. Mrs. Haygood admitted a telephone conversation but denied that she was asked to vacate before the 21st and denied also that she promised to vacate earlier. Mrs. Webb said that she saw Mr. Roberts make a telephone call but did not hear the conversation, but after the call, he assured her that the apartment would be ready for occupancy on March 22nd. On Friday, March 16th, appellant sent a crew to begin the redecoration and they were denied entrance because Mrs. Haygood had not vacated. On the following Monday, Mr. Roberts went with the crew to the apartment again and they were denied entrance by the maid. They did not get access to the apartment until March 22nd.

Appellant contends that it was entitled to the affirmative charge because the evidence showed that it had recovered a judgment against the plaintiff here on the first trial and this fact was conclusive as to the pres-

ence of probable cause, even though plaintiff secured a judgment on appeal, there being no evidence in the instant case of fraud, perjury or other improper means.

This question does not appear to have been decided by this court insofar as civil cases are concerned, except in an attachment suit to which reference will be made later. This court does not follow the majority rule in cases of malicious prosecution arising out of criminal cases. The rule, according to the weight of authority, is that the judgment of conviction, if not obtained by improper means, is conclusive evidence of probable cause for instituting the prosecution even though the conviction is reversed. 34 Am. Jur., Malicious Prosecution, § 55; 54 C.J.S. Malicious Prosecution § 37b; Vol. II Modern American Law, Torts, Malicious Prosecution, § 5, p. 297. The "settled rule for Alabama" is "that the judgment of conviction, though later vacated and accused discharged, is prima facie evidence of the existence of probable cause for instituting the prosecution 'which may be rebutted by any competent evidence which clearly overcomes the presumption arising from the fact of defendant's conviction in the first instance.'" Republic Steel Corp. v. Whitfield, 260 Ala. 333, 70 So.2d.424, 426; Kemp v. York, 16 Ala.App. 675, 81 So. 195, certiorari denied, 202 Ala. 425, 80 So. 809.

The majority rule in malicious prosecution cases arising out of civil cases is that unless a judgment or decree in prior civil proceedings against the malicious prosecution plaintiff was obtained by fraud, perjury or other improper means, the judgment or decree establishes or shows conclusively the existence of probable cause for bringing the former action even though it was subsequently reversed or set aside. 58 A.L. R.2d 1430, § 5; 34 Am.Jur., Malicious Prosecution, § 57; 54 C.J.S. Malicious Prosecution § 24b.

Many differences between malicious prosecution suits arising from criminal cases and those arising from civil cases are pointed out in Restatement of the Law of Torts, Vol. 3, §§ 674, 675. Some of these differences are:

1. A prosecution for a criminal offense is not justified unless the prosecutor believes and has probable cause for believing that the person against whom the proceedings are brought is guilty of the crime charged against him. Belief, even if reasonable, in the possible guilt of the accused is not enough to give the private prosecutor cause to initiate criminal proceedings. On the other hand, a reasonable belief in the possibility that the claim may be held valid is sufficient to give probable cause for the initiation of civil proceedings.

2. The only proper purpose for initiating criminal proceedings is to aid in the administration of the criminal law by bringing one who is believed to be a criminal to justice, while civil proceedings may properly be brought to secure the adjudication of a claim which the person initiating them believes may possibly be adjudicated in his favor.

3. Where the action is for the initiation of criminal proceedings, the private prosecutor may escape liability by proving that the accused was guilty of the crime charged against him, even though the proceedings had resulted in his acquittal. Where, however, the proceedings are civil, the decision of a competent tribunal is a final adjudication of all matters in dispute. Therefore, the person who unsuccessfully initiates civil proceedings can not relitigate the validity of his claim in an action brought for their wrongful initiation.

4. In order to recover, the plaintiff must prove something more than the mere fact that the civil proceedings have been initiated without probable cause and for an improper purpose and have terminated in his favor. He must show either material harm or the violation of a legal right which is in itself sufficient to support an action for damages.

5. In one particular a private prosecutor's reasonable belief in the guilt of the accused differs from the reasonable belief

of one who initiates private civil proceedings against another. A private prosecutor does not have reasonable grounds for believing that the accused has conducted himself in a particular manner, if he merely entertains a suspicion even though he reasonably believes it may be verified upon further investigation. On the other hand, where the proceedings are civil, it is enough that the person initiating them believes that he can establish the existence of such facts to the satisfaction of the court and jury. In a word, the initiator of private civil proceedings need not have the same degree of certainty as to the relevant facts which is required of a private prosecutor of criminal proceedings. In many cases civil proceedings, to be effective, must be begun before the relevant facts can be ascertained to any degree of certainty. To put the initiator of such proceedings to a greater risk of liability would put an undesirable burden upon those whose rights cannot be otherwise effectively enforced.

6. In criminal proceedings, the initiator must correctly believe that the facts constitute the crime charged, or his belief must be based upon the advice of counsel, sought in good faith and given after full disclosure of the facts. In determining probable cause for initiation of civil proceedings, all that is necessary is that the claimant reasonably believe that there is a chance that his claim may be held valid upon adjudication.

7. A claimant may believe that his claim is valid and that the correctness of that belief will be established by the court's finding in his favor. The possible validity is merely a matter of opinion and all that is required is that the opinion is reasonably entertained. To hold that the person initiating civil proceedings should be liable, unless the claim prove valid, would throw an undesirable burden upon those who by advancing claims not heretofore recognized nevertheless aid in making the law consistent with changing conditions and changing opinions. There are many instances in which a line of authority consistent with itself has been rejected. To subject those who challenge such authority to the liability of suits for malicious prosecution if they are not successful in persuading the courts to take a new look at a principle might prove a deterrent to the overturning of archaic decisions.

Our research has convinced us that the line of decisions which constitute the weight of authority as to malicious prosecutions arising out of civil proceedings are sounder and more logical and should be followed.

█ To succeed in an action for malicious prosecution, the averments and proof must show first, a judicial proceeding; second, that it was instigated by the defendant; third, want of probable cause; fourth, malice; fifth, the termination of the judicial proceeding favorably to the plaintiff; and sixth, the damage. Covington v. Robinson, 242 Ala. 337, 6 So.2d 421; Birmingham Bottling Co. v. Morris, 193 Ala. 627, 69 So. 85; Sanders v. Davis, 153 Ala. 375, 44 So. 979; Crim v. Crim, 39 Ala.App. 413, 101 So.2d 845. Here, there was no proof of want of probable cause under the rule stated supra. In Turner v. J. Blach & Sons, 242 Ala. 127, 5 So.2d 93, 94, we said:

"The existence, vel non, of a good cause of action in the original suit is not to be litigated in the action of malicious prosecution. That question turns on the result of the original suit. Termination of that suit in favor of defendant therein is a condition precedent to his action for malicious prosecution, wherein the issues are: Was the original suit instituted or its prosecution persisted in maliciously and without probable cause? No countenance can be given to actions for malicious prosecution growing out of the institution of a civil suit, unless instituted without probable cause, no matter what the result."

█ Neither party cites or discusses in brief the case of Penney v. Warren, 217 Ala. 120, 115 So. 16, 18. There, the ac-

tion was malicious prosecution on account of an attachment suit (not a suit on the attachment bond as provided for in Tit. 7, § 887, Code 1940) in which the plaintiff in the attachment suit secured a judgment in municipal court but the judgment was reversed on appeal to circuit court. That case recognizes the rule in Alabama that a standing judgment for the plaintiff in attachment is conclusive of the existence of probable cause for suing out the attachment, while a judgment for the defendant in attachment is only prima facie evidence of want of probable cause for suing out the attachment. The defendant in the malicious prosecution suit sought to show that the municipal court had rendered judgment in his favor as plaintiff in the attachment suit, notwithstanding its reversal in the circuit court on appeal. This court said: "We have before us no precedents dealing with this question, but our view of the matter is, that where there is an appeal from a primary and inferior court to a higher court, and a trial de novo on the issues of fact, with judgment on the merits of the case in favor of the appealing party, the primary judgment loses its value as evidence of the existence of probable cause." At the time the above was written, there were no apt precedents dealing with the question in Alabama, but there was an abundance of authorities collected in the authority cited (38 C.J. 419, § 58), the second sentence of which reads: "On the other hand the weight of authority is to the effect that a judgment or finding in favor of plaintiff in an original action is conclusive evidence of probable cause, or estops defendant therein from denying the existence of probable cause, in the absence of fraud or other improper means used in obtaining the judgment; and it has been held that the conclusiveness of the judgment on the question of probable cause is not affected by the fact that it is erroneous, or by the fact that it is reversed on appeal to a higher court or set aside for irregularity, or by the fact that the enforcement of the judgment has been perpetually enjoined." See also 54 C.J.S. Malicious Prosecution § 24. We are here dealing with a suit for malicious prosecution, an action "not favored in law," and "the action has been hedged about by limitations more stringent than those in the case of almost any other act causing damage to another, and the courts have allowed recovery only when the requirements limiting it have been fully complied with." 34 Am.Jur., Malicious Prosecution, § 5; 54 C.J.S. Malicious Prosecution § 3; American Surety Co. v. Pryor, 217 Ala. 244, 115 So. 176. One of the reasons for this rule is that public policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge. If this were not the case, a large proportion of unsuccessful civil actions would be followed by suits for malicious prosecution, and there would be a piling of litigation on litigation without end. Burt v. Smith, 181 N.Y. 1, 73 N.E. 495; Gore v. Condon, 87 Md. 368, 39 A. 1042, 40 L.R.A. 382, 67 Am. St.Rep. 352; Owens v. Graetzel, 149 Md. 689, 132 A. 265.

■ We feel strongly that a litigant should be entitled to have his rights determined in a court of law without risk of being sued and having to respond in damages, for seeking unsuccessfully to enforce his rights, and we think the better rule is that unless a judgment or decree in prior civil proceedings against the malicious prosecution plaintiff was obtained by fraud, perjury or other improper means, the judgment or decree establishes or shows conclusively the existence of probable cause for bringing the former action even though it was subsequently reversed or set aside, anything in Penney v. Warren, 217 Ala. 120, 115 So. 16 [7], to the contrary notwithstanding. Other cases following this rule where a trial in a court similar to our circuit court reversed a judgment of a lower court in favor of the malicious

prosecution defendant are: Goldstein v. Sabella, Fla., 88 So.2d 910, 58 A.L.R.2d 1418 (eviction); McBride v. Alles, 222 Ky. 725, 2 S.W.2d 391 (attachment); Gause v. McClelland, 102 Cal.App.2d 762, 228 P.2d 91 (unlawful detainer).

We recognize that there is some difference between malicious prosecution suits based upon attachments and other civil proceedings, because the attachment is obtained on an ex parte affidavit without a hearing on the alleged grounds supporting the attachment. 58 A.L.R.2d 1441, § 22. But we cannot agree that a final judgment in favor of the plaintiff in attachment in a primary court which is reversed on a trial de novo on appeal, "loses its value as evidence of the existence of probable cause," because there is a vast difference in probable cause for instituting an action and the ultimate judgment based upon the action. Regardless of the final outcome of the case, a final judgment of a court of record in favor of the plaintiff in attachment should be admitted as evidence of probable cause. Cf. Republic Steel Corp. v. Whitfield, 260 Ala. 333, 70 So.2d 424; Jordan v. Wilson, 263 Ala. 625, 83 So.2d 340; Crim v. Crim, 39 Ala.App. 413, 101 So.2d 845, which hold that in criminal malicious prosecution cases a prior judicial judgment for plaintiff, although later set aside, is prima facie evidence of probable cause, and acquittal is not even prima facie evidence of lack of probable cause.

Under the rule adopted in this case, the requisite element of lack of probable cause was absent because the judgment for the appellant in the municipal court was conclusive evidence of probable cause, there being no evidence of fraud, perjury or improper means in its procurement, and appellant was entitled to the requested affirmative charge.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, SIMPSON, STAKELY and GOODWYN, JJ., concur.