The defendant appeals from a judgment based upon a jury verdict for the plaintiff in the amount of $15,000.00. We reverse and remand.
The litigation arose out of attempts by defendant to collect money under a promissory note and security agreement between defendant, plaintiff and her husband. Plaintiff and her then husband each signed that agreement and a real estate mortgage.
Following a default in the payment of the loan, the defendant, apparently by mail, sent a delinquency notice to the debtors on December 27, 1979; another was sent to plaintiff herself on June 25, 1980. In July 1980 a representative of the defendant telephoned plaintiff's office without result. He then telephoned plaintiff's apartment on two occasions. The conversations which ensued were brief; the representative identifying himself and giving the purpose of his call, and plaintiff expressing to him her opinion that the debt was not hers, but was that of her husband. Mr. Sheldon, plaintiff's former husband and a signatory to the loan documents, on January 21, 1980, had filed a petition in the United States Bankruptcy Court for relief under 11 U.S.C. Chapter 13.[1] The defendant's representative knew this at the time of his call to her on July 17, 1980, and gave this knowledge as the reason for his call. He then telephoned plaintiff's attorney to inquire whether or not plaintiff herself was in bankruptcy and was advised by someone in that office that she was not. Whereupon on that date defendant's representative mailed a form letter to plaintiff notifying her that her account had been sent to an attorney with instructions to file suit against her. It called attention to the added expense involved and added:
 Even at this late date, we are willing to work with you to bring your account to a current status. We believe that it is to your advantage to avoid unnecessary costly legal proceedings.
The representative contacted the plaintiff again on July 29, 1980, informing her that he had contacted her attorney and had sent her account to defendant's attorney.
On July 30, 1980, plaintiff's attorney sent a letter to the defendant's representative, with a copy to defendant's attorney, pointing out that plaintiff and her husband had divorced, that under the decree the former husband was to satisfy all indebtedness incurred by him during the marriage, and taking the position that the defendant's delinquent account concerned a debt owed by plaintiff's former husband, not by plaintiff. That decree, which was later admitted into evidence, actually recites:
 4. That the wife shall pay the outstanding indebtedness to Troy State University incurred by her for educational *Page 47 
expenses and that the husband shall pay all other marital bills . . . incurred by the parties prior to the date of any decree to be rendered in this cause and that the husband shall hold the wife harmless from liability for same. [Emphasis added.]
On August 13, 1980, defendant filed an action against plaintiff in the District Court of Montgomery County to recover the balance due it on the loan agreement. An employee of the sheriff's department took the summons and complaint to the plaintiff's apartment complex. He obtained her correct address from the manager but, finding no one at home, returned to the sheriff's office where he found instructions to serve the process upon plaintiff's attorney. Plaintiff later found a message from the sheriff's department on her door asking her to pick up some papers at the courthouse. She telephoned and requested the sheriff's office to serve the papers upon her attorney, which was done.
The complaint was amended on August 29, 1980, and on September 16, 1980, it was dismissed on the present defendant's motion. That same day the present plaintiff filed a complaint in circuit court containing Count I alleging an invasion of her privacy, Count II alleging malicious prosecution, and Count III alleging libel. In the due course of pleading, the defendant filed a motion for summary judgment against plaintiff on plaintiff's complaint and against plaintiff on defendant's counterclaim to recover the alleged sum due under the loan agreement. This motion was denied.
Meanwhile, on December 17, 1980, a hearing was held in the bankruptcy court to determine whether the statutory co-debtor stay of execution provided by Section 1301 of the Bankruptcy Code should be lifted. That court found from the evidence that plaintiff had executed a promissory note and security agreement on May 18, 1979, and was liable to defendant for any sum due under said note. The findings continued:
 It further appears that this debtor's plan does not provide for any payment to Liberty Loan Corporation and that accordingly the codebtor stay provided by Section 1301 of the Bankruptcy Code should be lifted as provided by Section 1301 (c)(2).
 It is accordingly ORDERED that the codebtor stay be and is hereby lifted as to Rita Mizell and the creditor Liberty Loan Corporation is free to proceed according to law.
The case proceeded to jury trial. At the conclusion of plaintiff's evidence, the defendant's motion for a directed verdict was denied. Following the jury's verdict in favor of plaintiff, the defendant moved for a judgment notwithstanding the verdict and a new trial on the ground, among others, that the verdict and judgment were contrary to the evidence. Those motions were denied. This appeal ensued.
In the count charging an invasion of privacy, plaintiff alleged that her husband had borrowed the money; that he had filed for bankruptcy; that defendant was aware of this, but nevertheless contacted plaintiff at home and at work on numerous occasions demanding payment of a past due account which she advised was not hers; that defendant filed suit against her, made numerous threats to plaintiff, notified one or more credit rating companies that she owed a past due debt, and otherwise harassed plaintiff with threats of suit and collection for a debt that was not owed by plaintiff.
The tort of invasion of the right of privacy, insofar as it applies to actions of a creditor in regard to his debtor, is "the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Norris v.Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (1961), quoting from Smith v. Doss, 251 Ala. 250, 37 So.2d 118 (1948). As Norris cautioned, however, not every effort by a creditor to collect a debt rises to the level of a lawsuit by the debtor:
 The mere efforts of a creditor . . . to collect a debt cannot without more be considered a wrongful and actionable intrusion. *Page 48 
A creditor has and must have the right to take reasonable action to pursue his debtor and collect his debt. . . .
As Norris pointed out, some courts have applied a rule of "reasonableness" in judging the extent to which a creditor may act in pursuing collection and cited cases exemplifying unreasonableness. Those cases disclose patterns of repeated conduct equating deliberate harassment, or systematic campaigns designed to vilify the debtor or expose him to public ridicule.
This case contains no facts from which any such inference could reasonably be made. The creditor sent two notices of account delinquency, one of which was addressed to plaintiff when the account was past due. One telephone call was made to her office, and there is no evidence that it was untoward. Two calls were made to plaintiff's home. In the first the company representative identified himself and his purpose; the plaintiff denied liability and referred him to her attorney. When he telephoned her attorney, he inquired whether plaintiff was in bankruptcy and received a negative answer. He then sent plaintiff a letter advising that her account had been turned over to a lawyer. This notice was given to plaintiff by telephone almost two weeks later.
The district court action was filed the next month claiming the balance of the account. The complaint had the wrong address; the process server obtained the correct address from the apartment manager and left a message for her, but nothing else transpired in any way to humiliate or harass plaintiff. Plaintiff herself testified that the company representative did not subject her to any abuse during their telephone conversations. In short, nothing occurred in the nature of an invasion of privacy; nothing occurred that was calculated to offend a person of ordinary sensibilities. The preponderance of the evidence, to say the least, was against proof of the allegations of Count 1.
We reach the same conclusion with respect to Count II charging malicious prosecution.
It is axiomatic that a charge of malicious prosecution must be supported by proof of a lack of probable cause and malice,Boothby Realty Company v. Haygood, 269 Ala. 549, 114 So.2d 555
(1959), and it is clear that evidence implying the existence of neither of these elements was adduced below.
Was there probable cause for the institution of the action filed in district court to enforce the debt? If that action was brought with probable cause, then the malicious prosecution action would not arise no matter what the result in the former action was. Turner v. J. Blach Sons, 242 Ala. 127, 5 So.2d 93
(1942). And for the defense of probable cause to prevail, the defendant in the subsequent action must have reasonably entertained the opinion that, upon adjudication, the claim he put forth in the former action would prevail. Gamble v. WebbQuarterback Club, Ala.Civ. App., 386 So.2d 455 (1980), cert.denied, Ex parte Gamble, Ala., 386 So.2d 459 (1980). As stated in Boothby, supra, 269 Ala. at 554, 114 So.2d 555:
 One of the reasons for this rule is that public policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge. If this were not the case, a large proportion of unsuccessful civil actions would be followed by suits for malicious prosecution, and there would be a piling of litigation on litigation without end. [Citations omitted.]
Conceding, as the plaintiff insists, that the defendant knew of the bankruptcy proceedings, those proceedings were not instituted by the plaintiff but by her husband. Plaintiff freely and voluntarily executed the promissory note and security agreement, the failure of which gave rise to the district court action. The language of each agreement contemplated more than one signatory, and upon signing each *Page 49 
became liable as a joint maker. Elrod v. Trussell, 266 Ala. 383,96 So.2d 813 (1957). See also Code of 1975, § 7-3-413. And, while the parties' divorce decree did place the obligation to pay the indebtedness upon the husband, that decree did not state that she was not indebted. Indeed, the decree required the husband to indemnify plaintiff by holding her "harmless." It is true that Section 1301 of the Bankruptcy Code provides for an automatic stay of proceedings against a co-debtor; however, that provision is not a final adjudication but only a postponement of further proceedings by the creditor:
 The protection [to the debtor] is limited, however, to ensure that the creditor involved does not lose the benefit of the bargain he made for a cosigner. He is entitled to full compensation . . . provided for by the agreement under which the debtor obtained his loan. . . . The creditor is delayed, but his substantive rights are not affected.
. . . .
 Under the terms of the agreement with the codebtor who is not in bankruptcy, the creditor has a right to collect all payments to the extent they are not made by the debtor at the time they are due. To the extent to which a Chapter 13 plan does not propose to pay a creditor his claims, the creditor may obtain relief from the court from the automatic stay and collect such claims from the codebtor. . . . [5 Bkr. — L.Ed. § 45:9 at 6; see also In re Betts, 8 B.R. 799
(Bkrtcy.S.D.Ohio 1981).]
Thus, even though the district court action to enforce the debt was later dismissed on the present defendant's motion, its knowledge of plaintiff's husband's bankruptcy did not impute a lack of probable cause to prosecute that action against this plaintiff, a co-debtor, for the effect of the bankruptcy law did not act on the legality of her debt but only postponed collection in order to assure that her co-debtor, the bankrupt, was insulated from "indirect pressure from his creditors exerted through friends or relatives that may have cosigned an obligation of the debtor." 5 Bkr. — L.Ed. § 45.9 at 6. As we have shown, that postponement was lifted by the bankruptcy court following a hearing which found the plaintiff liable to the defendant on the promissory note. In weighing the defendant's action in light of the facts as they appeared at the time of the district court action, and considering that action in accord with the defendant's exercise of its legal rights, we cannot conclude that any evidence was shown which created an inference of lack of probable cause. Such a course of conduct, moreover, could not furnish an inference of malice.Emerson v. Lowe Mfg. Co., 159 Ala. 350, 49 So. 69 (1909).
Finally, our examination of the record convinces us that there was a failure of proof of Count III which charged this defendant with defaming plaintiff by publishing false statements that plaintiff was indebted to defendant, refused to pay it, and that her credit was bad. It has been shown that plaintiff did owe the debt to defendant. Truth is an absolute defense to defamation. Ripps v. Herrington, 241 Ala. 209,1 So.2d 899 (1941). Moreover, the plaintiff did not allege or prove any special damage. In this jurisdiction "words charging nonpayment of debts . . . are actionable without special damage being shown, when they refer to merchants, tradesmen, or others in occupations where credit is essential." Harrison v. Burger,212 Ala. 670, 672, 103 So. 842 (1925). Plaintiff, a psychiatric social worker, does not have an occupation falling within that category. Indeed, according to her own testimony, her damage consisted of embarrassment and attorney's fees.
Our previous recital of the facts amply discloses an absence of any facts establishing an actionable publication. We have not found in the record, nor have we been pointed to, any publication made by the defendant to any credit bureau or similar organization, but even if such report had been made, it would have been protected by the defense of truth. Jakob v.First Alabama Bank of Montgomery, Ala., 361 So.2d 1017 (1978). Additionally, it appears that *Page 50 
such a report to a credit agency is generally held to be qualifiedly privileged, i.e., not actionable if made in good faith by a party having an interest in the matter to another having a corresponding interest. See 53 C.J.S. Libel andSlander § 119 (1948). Nothing in the facts before us indicates any lack of good faith on the part of the defendant in its conduct to collect this debt, nor was there any communication containing matter which would tend to defame. Neither the late notices nor the telephone messages contained any such inferences. No verbal abuse of any kind was disclosed. The attempted service of process by the deputy sheriff contained nothing in the way of defamatory matter. Plaintiff herself communicated the fact of defendant's lawsuit against her to her friends and associates at work, not defendant. Under these facts no prima facie case of defamation was established.
Although defendant moved for a directed verdict at the conclusion of the evidence, the denial of that motion is not made a ground of appeal; instead defendant has appealed from the denial of its motions for JNOV and a new trial and has argued the insufficiency of the evidence. Had defendant raised before us the denial of its motion for a directed verdict, that would have furnished a ground for reversal, as we have shown.Cf. Garmon v. King Coal Co., Inc., Ala., 409 So.2d 776 (1981). However, we are likewise clear to the conclusion that the evidence failed to establish a prima facie case on any count and thus it was error to deny the motion for JNOV. We have no alternative but to reverse the judgment and remand the cause to the trial court with directions to enter a judgment for the defendant. It is so ordered.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] Under Section 1301 of the Bankruptcy Code, the right of a creditor to proceed against a co-debtor is postponed until the manner of repayment is resolved.