PITTMAN, Judge.
Dr. Phillip Huggins, the defendant below, and Cincinnati Insurance Company (“Cincinnati”), an intervenor, appeal from a judgment of the Jefferson Circuit Court that, among other things, ruled in favor of Donald Goldstein, the plaintiff below, on a claim asserted by Dr. Huggins and Cincinnati alleging malicious prosecution. The appeal was transferred to this court by the Alabama Supreme Court pursuant to Ala. Code 1975, § 12-2-7(6).
In August 2003, Goldstein, acting through counsel, brought a medical-liability action against Dr. Huggins and various fictitiously named defendants in the trial court, alleging that Dr. Huggins, starting in January 2002, had -conducted “extensive” and “massive grinding” upon Gold-stein’s teeth in an effort to correct problems in his bite and that that grinding had left him without functional teeth, necessitating extensive restorative work and causing him to be unable to eat certain foods without difficulty, to suffer headaches, and to suffer adverse effects in his speech. Dr. Huggins unsuccessfully moved to dismiss the complaint on the ground that it failed to state a medical-liability claim with sufficient specificity under Ala.Code 1975, § 6-6-551. In October 2003, the trial court entered a scheduling order setting forth discovery deadlines and setting a trial date of September 13, 2004.
During the discovery process, Gold-stein’s and Dr. Huggins’s depositions were taken. At his deposition, Goldstein testified that in the summer of 2002 he had also received dental treatment from another dentist, Dr. Harold Wehby, in addition to his treatment from Dr. Huggins. However, Goldstein testified that he had received two crowns from Dr. Wehby and that Dr. Wehby had done no other dental work for him. Dr. Huggins admitted at his deposition that he had ground Gold-stein’s teeth on three occasions.
After Goldstein’s deposition, records from Dr. Wehby’s office were transmitted to counsel for Goldstein. Those records indicated, in contrast to Goldstein’s testimony, that Dr. Wehby had ground Gold-stein’s teeth on nine occasions during the same period of time that he was being treated by Dr. Huggins. One month later, counsel for Goldstein sent counsel for Dr. Huggins a letter proposing that the action against Dr. Huggins be dismissed with prejudice and enclosing a proposed stipulation of dismissal. However, counsel for Dr. Huggins failed or refused to execute the proposed stipulation. On April 13, 2004, Goldstein filed a motion, pursuant to Rule 41(a)(2), Ala. R. Civ. P., seeking a voluntary dismissal, with prejudice, of his claim against Dr. Huggins. That motion was set for a hearing on April 15, 2004.
On the date of the hearing on Gold-stein’s voluntary-dismissal motion, Dr. Huggins filed what he termed an “amended answer” (although no “original” answer previously had been filed) and a counterclaim asserting a malicious-prosecution claim under § 6-5-550, Ala.Code 1975, as well as claims under the Alabama Litigation Accountability Act, Ala.Code 1975, § 12-19-270 et seq., and under various common-law theories. In addition, Cincinnati (acting through the same attorney as had represented Dr. Huggins) filed a motion to intervene and a complaint in intervention that stated claims similar to those set forth in Dr. Huggins’s counterclaim; those filings indicated an apparent desire to intervene as an additional counterclaim *936 plaintiff. Although the record does not reflect the precise time on April 15, 2004, that Dr. Huggins’s and Cincinnati’s pleadings were filed, and although the record does not contain a transcript of that day’s hearing on Goldstein’s voluntary-dismissal motion, certain remarks made by counsel at the May 20, 2004, hearing on the merits of the claims asserted by Dr. Huggins and Cincinnati reveal that the trial court apparently had been made aware of the imminent filing of those pleadings before or during the hearing on Goldstein’s voluntary-dismissal motion and that the trial court had orally directed counsel for the parties both to minimize further litigation time and expenses and to avoid deposing physicians. The case action summary sheet does reflect that on April 15, 2004, the trial court granted Cincinnati’s motion to intervene and set a hearing on the claims asserted by Dr. Huggins and Cincinnati for May 20, 2004.
On May 7, 2004, after Goldstein had filed a reply to Dr. Huggins’s counterclaim, Goldstein filed a motion for a summary judgment on the claims against him. In support of his summary-judgment motion, Goldstein filed his affidavit, in which he affirmed that he had “serious memory problems” and that he had “no recall” of Dr. Wehby having ground his teeth; he added that although he had been informed that he would need 24 crowns as a result of grinding procedures he had undergone, he had concluded that it would be “in everyone’s best interests” for him to dismiss his claim against Dr. Huggins because of his “obvious memory deficiencies.” Goldstein also filed an affidavit of one of his physicians, Dr. James Abroms, who testified that he had observed that Gold-stein had “developed a significant problem with his memory” since April 2002 and that Goldstein’s “mental capacities ha[d] been significantly impaired,” possibly as a result of medications taken for dystonia (i.e., involuntary muscle spasms).
On May 18, 2004, Dr. Huggins filed a motion for a summary judgment on Gold-stein’s claim against him and a response to Goldstein’s summary-judgment motion. Dr. Huggins and Cincinnati also filed a “motion to exclude or preclude” the affidavits filed in support of Goldstein’s summary-judgment motion and a motion to continue the May 20, 2004, hearing pending further discovery. The record does not reflect any express ruling by the trial court upon any of the motions filed by Dr. Huggins or Cincinnati. Rather, the record shows that the parties appeared at a hearing on May 20, 2004, to address, in the words of the trial court, “a number of things that [we]re pending,” including the parties’ dispositive motions.
At the hearing, the trial court inquired whether everyone agreed that Goldstein’s claims against Dr. Huggins were due to be dismissed; after the parties’ attorneys responded in the affirmative, the trial court stated that such a dismissal would be forthcoming. The trial court then indicated that the only issues remaining pertained to the pending counterclaim asserted by counsel for Dr. Huggins and Cincinnati. When counsel for Goldstein offered to make him available for questioning by the trial court or by other parties, counsel for Dr. Huggins and Cincinnati objected to Goldstein’s being permitted to testify, arguing that his own summary-judgment motion had called into question his reliability as a witness; Goldstein was then “excused from testifying.” The trial court then heard testimony from Dr. Huggins and from Gold-stein’s wife.
After the hearing, the trial court entered a judgment that granted Goldstein’s motion to dismiss his claim against Dr. Huggins with prejudice and that ruled in favor *937 of Goldstein on the claims against him. In pertinent part, the trial court’s judgment provides:
“This case was commenced on August 24, 2003, by Donald Bert Goldstein, Jr., against a dentist, Phillip Huggins. [Goldstein] claimed damages under the Alabama Medical Liability [Act, Ala. Code 1975, § 6-5-480 et seq.]. After a status conference with counsel, the court issued a scheduling order on November 3, 2003 and the case was assigned to the trial docket of September 13, 2004.
“The parties proceeded with discovery and on March 5, 2004, only four months after the scheduling order was issued, [Goldstein’s] counsel informed [Dr. Huggins’s] counsel that [Goldstein] would no longer pursue [his] claim because of newly discovered evidence. [Dr. Huggins’s] counsel refused to sign a stipulation for dismissal. On April 7, 2004, [Goldstein’s] original counsel was allowed to withdraw from the case and on April 13, 2004 [his] substitute counsel filed a motion to dismiss. Still, [Dr. Huggins’s] counsel would not consent to a dismissal of the claim against his client but two days later, on April 15, 2004 he filed an amended answer and counterclaim ... along with a motion to intervene on behalf of Cincinnati[,] Huggins’s insurance carrier.
“[Goldstein] filed a motion for [a] summary judgment on the ... counterclaim and the motion was set for argument and submission ... on May 20, 2004. On May 18, 2004 [Dr. Huggins] filed a motion for [a] summary judgment on the ... original claim, even though [Gold-stein’s] own motion to dismiss was still pending. Other motions were also filed and presented to the court at the time of the hearing. The court heard arguments on the motions and took testimony at the scheduled summary judgment hearing;
“The evidentiary submissions show that.... Goldstein[] has significant memory problems which are likely to worsen over time. It is not known as to whether the memory problem is a result of the dystonia from which [Goldstein] suffers or from some other cause but the court has no doubt that his memory problem is real. [Dr. Huggins and Cincinnati’s] counsel objected to Goldstein’s testifying at the hearing because of lack of capacity to testify, but the court heard testimony from his wife. His memory has been seriously impaired.
“[Goldstein] originally contended that [Dr. Huggins] performed excessive grinding of his teeth which required extensive restorative work. Discovery revealed that another dentist was grinding Goldstein’s teeth at the same time that Dr. Huggins was grinding Goldstein’s teeth. Therefore, it would be difficult or even impossible for [Goldstein] to prove that [Dr. Huggins’s] actions breached the applicable standard of caret,] that such a breach was the probable cause of Goldstein’s injuries[,] and damages.
“The undisputed evidence shows that Goldstein had no memory that the other dentist was grinding his teeth. The court is convinced that this is true. Any reasonable person would know that the fact that work was being done by [another] dentist would be exposed during discovery. It is not something which could be covered up during civil litigation. The court knows that the lawyers who represented [Goldstein] are knowledgeable about civil litigation [and] are well-informed about professional ethics. When [Goldstein’s] counsel learned about the serious problem with the case, they promptly fulfilled their professional duty to their client, opposing counsel, *938 and the court. It makes no sense to this court that [Goldstein] or his counsel would have intentionally brought a suit without merit.
“Here the undisputed facts show that [Goldstein] could not know ... that his claim was without adequate legal basis, or false, or unfounded, or without probable cause. The court finds that Mr. Goldstein did not know of the shortcomings of his claim against [Dr. Huggins]. He did not have the capability to remember what had happened to him.
“This was not a frivolous lawsuit. Discovery showed that it was due to be dismissed and as soon as [Goldstein’s] counsel knew that they moved to dismiss it. [Dr. Huggins] is not entitled to damages or fees ... for malicious prosecution under [§ 6-5-550, Ala.Code 1975].
“The court is compelled to comment that the relationships among members of the Bar of this court have traditionally been unusually cordial, unlike some jurisdictions. It is a rare thing for our lawyers to seek the award of sanctions or other punitive measures against opposing counsel or parties. It has never been part of our local ‘legal culture.’ The court must express the hope that the ... conduct [of counsel for Dr. Huggins and Cincinnati], after [Goldstein] filed a Motion to Dismiss, is not a sign that those relationships are deteriorating.”
The “statement of the issues” contained in the appellate brief filed by Dr. Huggins and Cincinnati purports to state four issues. Those include: (1) whether § 6-5-550, Ala.Code 1975, mandates liability for malicious prosecution if a plaintiff initiates a medical-liability action after having forgotten about having received pertinent treatment from an additional medical or dental provider; (2) whether liability under § 6-5-550 may arise if a medical-liability action is continued after a plaintiffs receipt of “exculpatory” evidence concerning treatment by the additional provider; (3) whether the trial court should have considered the affidavits of Goldstein and Dr. Abroms; and (4) whether Dr. Huggins and Cincinnati were afforded adequate rebuttal discovery as to Goldstein’s memory claims. However, of those issues, only the first is presented in an argument supported by “citations to the cases, statutes, other authorities, and parts of the record relied on,” as is required by Rule 28(a)(10), Ala. R.App. P. Stated another way, the appellants have cited no caselaw that would support reversal as to the substantive effect of Goldstein’s alleged discovery of exculpatory evidence or that would compel a conclusion that the trial court erred in relying upon the affidavits filed by Gold-stein.
The appellants have supported with caselaw (albeit with mostly foreign caselaw) their contention that “I forgot” is not a defense to a malicious-prosecution action brought against a medical-liability plaintiff after the defendant has prevailed in the underlying litigation. That contention and supporting argument require consideration of the law of malicious prosecution in the aftermath of the Legislature’s enactment of § 6-5-550, Ala.Code 1975. At common law, the elements of malicious prosecution are (1) a judicial proceeding initiated by the defendant, (2) the lack of probable cause, (3) malice, (4) termination in favor of the plaintiff, and (5) damage. Lee v. Minute Stop, Inc., 874 So.2d 505, 512 (Ala.2003). In pertinent part, however, § 6-5-550 provides (emphasis added):
“There is hereby created a cause of action for damages for malicious prosecution on the grounds that the party instituting a civil action for injury or damages whether in contract or in tort *939 against a health care provider based on a breach of the standard of care knew or should have known that the same was without adequate legal basis, or false, or unfounded, or without probable cause in the filing of such action, or that the same was filed as a part of a conspiracy to misuse judicial process by filing such a civil action known to be without legal basis, false, or unfounded. In any action for malicious prosecution under this section, the injured party may recover actual damages including litigation costs paid by or on behalf of the injured party or in the alternative liquidated damages of $500 plus a reasonable attorney’s fee and all other costs of litigation. In an action for malicious prosecution under this section, ackcal malice need not be an element of the claim nor do special damages need to be proved. The elimination of these requirements in permitting the recovery of actual damages or liquidated damages, a reasonable attorney’s fee and other costs of litigation is intended to be in derogation of the common law.”
Thus, the Legislature has directed that a medical provider bringing a malicious-prosecution action against a plaintiff who instituted an unsuccessful medical-liability action against that medical provider (such as Goldstein, whose medical-liability action has been dismissed with prejudice) will be required only to show that the plaintiff in the medical-liability action “knew or should have known” that that underlying action was without adequate legal basis, or false, or unfounded, or without probable cause. Therefore, this appeal may properly be said to concern whether Goldstein’s action was instituted without an adequate legal basis so as to lack probable cause under Alabama law.
“In a civil proceeding, all that is necessary for probable cause is that the claimant ‘reasonably believe that there is a chance that [the] claim may be held valid upon adjudication.’ ” Leak v. Avco Fin. Servs., 646 So.2d 642, 644 (Ala.1994) (emphasis added; quoting Fina Oil & Chem. Co. v. Hood, 621 So.2d 253, 257 (Ala.1993)). In Boothby Realty Co. v. Haygood, 269 Ala. 549, 114 So.2d 555 (1959), the Alabama Supreme Court enunciated certain other pertinent principles of law pertaining to a malicious-prosecution claim where the underlying litigation, as here, is civil and not criminal:
“[Wjhere the proceedings are civil, it is enough that the person initiating them believes that he can establish the existence of such facts to the satisfaction of the court and jury. In a word, the initiator of private civil proceedings need not have the same degree of certainty as to the relevant facts which is required of a private prosecutor of criminal proceedings. In many cases civil proceedings, to be effective, must be begun before the relevant facts can be ascertained to any degree of certainty. To put the initiator of such proceedings to a greater risk of liability would put an undesirable burden upon those whose rights cannot be otherwise effectively enforced.
“... A claimant may believe that his claim is valid and that the correctness of that belief will be established by the court’s finding in his favor. The possible validity is merely a matter of opinion and all that is required is that the opinion is reasonably entertained. To hold that the person initiating civil proceedings should be liable, unless the claim prove valid, would throw an undesirable burden upon those who by advancing claims not heretofore recognized nevertheless aid in making the law consistent with changing conditions and changing opinions. There are many instances in which a line of authority consistent with *940 itself has been rejected. To subject those who challenge such authority to the liability of suits for malicious prosecution if they are not successful in persuading the courts to take a new look at a principle might prove a deterrent to the overturning of archaic decisions.”
269 Ala. at 553, 114 So.2d at 558. The liberal standard by which a malicious-prosecution defendant’s conduct is to be judged is justified by reasons of public policy, as Boothby Realty also explains:
“[A] suit for malicious prosecution [is] an action ‘not favored in law,’ and ‘the action has been hedged about by limitations more stringent than those in the case of almost any other act causing damage to another, and the courts have allowed recovery only when the requirements limiting it have been fully complied with.’ One of the reasons for this rule is that public policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge. If this were not the case, a large proportion of unsuccessful civil actions would be followed by suits for malicious prosecution, and there would be a piling of litigation on litigation without end.”
269 Ala. at 554, 114 So.2d at 559 (citations and internal quotation marks omitted).
In this case, Goldstein’s teeth were undisputedly ground by Dr. Huggins on three occasions, and while Dr. Wehby did also grind Goldstein’s teeth during the pertinent time period, there is no indication in the record that Dr. Huggins’s grinding sessions were not more intense or of greater duration than those performed by Dr. Wehby. Moreover, Goldstein’s affidavit indicates that at the time he consulted with counsel in preparation for filing the action against Dr. Huggins, he disclosed to his attorneys his doctors and dentists whose names he could recall (as well as an oral summary of the extent of treatment he had received), at which time he informed counsel that he believed that he had received a crown from Dr. Wehby.
The enactment of § 6-5-550, although abolishing the need to prove special damages and actual malice and permitting the recovery of liquidated or actual damages, did not alter the common-law principles disfavoring malicious-prosecution actions, nor did it destroy the principle that parties need only have circumstantially reasonable subjective beliefs in the validity of their civil cases in order to defeat such actions. Although the discovery process in this action ultimately proved that Goldstein would not be able to separate, for purposes of affixing tort liability, the remembered work performed by Dr. Huggins from the forgotten work performed by Dr. Wehby, that discovery does not render Goldstein’s conduct devoid of probable cause ab initio. On the contrary: given the constraints of his memory loss, Goldstein may reasonably have entertained the belief, at the time his medical-liability claim against Dr. Huggins was filed in October 2008, that that claim had a chance of success. We thus conclude that the trial court could reasonably have determined, based upon the evidence presented at the May 20, 2004, hearing and the affidavits submitted in support of Goldstein’s summary-judgment motion, that Goldstein had probable cause to initiate a claim against Dr. Huggins at the time that claim was filed. The trial court’s judgment is due to be affirmed. The appellee’s motion to dismiss and alternative motion for sanctions, the appellee’s motion to strike the reply brief, and the appellants’ motion to *941 strike/preclude or to require references to the record are denied.
MOTIONS DENIED; AFFIRMED.
THOMPSON and MURDOCK, JJ, concur.
CRAWLEY, P.J., and BRYAN, J., concur in the result, without writing.